JAMES C. GROENDYKE, Appellee, v. E. C. MUSGRAVE, Appellant.

123  535
f125  337

Guaranty: CHANGE OF CONTRACT: DISCHARGE OF GUARANTOR. The
1   fact that a portion of an order of goods proved defective in
quality and was returned by the purchaser without the knowl-
ledge or consent of a guarantor will not operate as a change in
the contract of purchase so as to relieve the obligation of an
unconditional guaranty.

Appeal: DISMISSAL: SECOND APPEAL. A perfected appeal may be
2   voluntarily dismissed, and thereafter and within six months
from the date of judgment sought to be reviewed a second
appeal may be taken.

*Appeal from Polk District Court.*—HON. W. H. MCHENRY, Judge.

MONDAY, APRIL 11, 1904.

ACTION at law upon a contract of guaranty. Judgment
for plaintiff, and defendant appeals.—*Affirmed.*

*Dunshee & Dorn* and *Dudley & Coffin* for appellant.

*Chas. L. Powell* for appellee.

WEAVER, J.—In May, 1901, the Economy Manufactur-
ing & Supply Company was a corporation in the city of Des
Moines doing business as a dealer in agricultural implements
and binding twine. At the same time the plaintiff herein
was a wholesale dealer in similar goods at Chicago, Ill. The
plaintiff's traveling representative, under date of May 6,
1901, obtained a written order from said corporation for a
quantity of binding twine, described as "25,000 lbs. sisal at
7½ c. per lb, and 25,000 lbs. Standard at 7⅞ c. per lb." As
originally written, the order provided that a note for the
amount of the purchase price should be given plaintiff, to
become due October 1, 1901. On receipt of the order, plain-

tiff, not being satisfied with the financial standing of the corporation, returned it to the agent, requesting him to take it to Des Moines and get it indorsed by defendant, who was understood to have some interest in the Economy Manufacturing & Supply Company. Defendant was therefore approached by the agent, and his guaranty requested, and, after some conversation, acceded to the request by signing a memorandum upon the order as follows: "We hereby guarantee the payment under this contract for twine purchased of Jas. C. Groendyke. [Signed] E. C. Musgrave." Before this guaranty was executed, the terms of payment were changed by making one-half of the amount fall due October 1, and the other half November 1, 1901. It is shown without dispute that this was done with the knowledge of the defendant, and that with such knowledge he signed the contract of guaranty. Upon the order thus secured, the quantity of twine named therein was shipped and duly received. Later in the season it was discovered that the twine described in the order as sisal was of an inferior quality, and, after considerable correspondence between the plaintiff and the Economy Manufacturing & Supply Company, the matter was adjusted by a return of the inferior twine to plaintiff, who gave full credit for the same at contract price, including freight. Notes for the balance of the purchase price were not promptly given. Plaintiff, having prepared such notes, sent them to Des Moines to be executed. On being presented to defendant, he objected to making or indorsing any note, saying his guaranty on the contract was sufficient; and, in the end, the corporation sent in its own notes for the amount. During the month of October the company remitted to plaintiff the sum of $800, and, after giving due credit therefor, there was left a balance due the plaintiff of $1,380.85, which remains due and unpaid, and the corporation has since been adjudged a bankrupt. The only defense to plaintiff's right of recovery argued by counsel is based upon the allegation that the twine shipped by plaintiff, or a part of it, did not correspond with the sample exhibited at the time the order was given; that it

was rotten and unmerchantable; and that, by the return of a part of the twine without his consent, the contract contained in the order was materially changed. This claim is stated with numerous variations, but the substance is as above given.

I. Did the fact that a part of the twine was not such as ordered, or that a part, proving of defective quality, was returned to the seller, without notice to or consent of the defendant, operate to release the latter from his contract of guaranty? It is undoubtedly true, as urged by counsel, that the guarantor may avail himself of any defense which is open to his principal, but this rule does not seem to afford any relief for this appellant. It is quite clear, upon the undisputed facts, that, if this were an action against the Economy Manufacturing & Supply Company upon the order for twine, it could not successfully interpose the defense of which the guarantor seeks to avail himself. It purchased two distinct quantities and qualities of twine. One of these proved to be satisfactory, and was made use of by the purchaser. The other proved unsatisfactory, and was returned to the plaintiff, and full credit given therefor; thus reducing the debt by nearly one-half. But suppose this defective twine had not been returned and suit had been brought against the company for the entire purchase price. The company could have set up the breach of the implied warranty by way of counterclaim only, and not as a defense; and, after applying the damages assessed by the jury, the plaintiff would have had judgment for the unpaid remainder. In such case is there any rule or principle of the law of guaranty which would relieve the appellant from liability for this unpaid remnant of the purchase price, simply because the creditor has been unable to establish a right of recovery against the principal to the full extent of his claim? Counsel have cited us to no authority so holding, and the proposition lacks the essential element of justice which should appear to warrant us in establishing such a precedent. So far as the purchaser is concerned, if there be any defense to a recovery for the agreed price of the twine actually used, it is not sug-

GUARANTY: change in contract: discharge of guarantor.

gested. It is also true that a guarantor is not to be charged with liability beyond the terms of his contract. In other words, his liability is not to be enlarged by implication. Brandt on Suretyship, section 80; *Congower v. Association,* 94 Iowa, 499. But what was appellant's contract? Had he seen fit to make his guaranty conditional upon the delivery to his principal of twine of a certain quality, he might then be heard to plead and rely upon a failure to perform such condition precedent. Under such a state of facts, the rule applied in *Harney v. Laurie,* 13 Ill. App. 400, cited in the argument, would be available. In that case the guaranty was, "If you sell Mr. Harmon a sheller and it works satisfactorily, we will see that it is paid for." The sheller did not work satisfactorily, and, although Harmon failed to return it according to the terms of his purchase, and thereby lost the right to defend against an action for the agreed price, it was held that the guarantor was not liable. He was relieved, however, not simply because there was a failure of the warranty made to Harmon, but because, by the express terms of the contract of guaranty, his liability was conditioned upon the satisfactory work of the sheller. Had the language of the guaranty been, "If you sell Mr. Harmon a sheller, we will see it paid for," a very different question, and one in point with the case before us, would have been presented. The appellant's agreement is to "guarantee the payment under this contract for twine purchased of James C. Groendyke." In other words, it unconditionally undertakes that the Economy Manufacturing & Supply Company will perform its contract embodied in the written order, and will pay to the plaintiff whatever sum may legally become his due according to its terms, whether that sum be the full contract price, or such lesser amount as upon an adjustment of the account between the parties, according to the terms of the order and the law applicable thereto, he shall be found entitled to recover.

Let us assume that the entire shipment had been defective, or of such inferior grade that the company might properly have refused to receive it, or, having received it, to re-

turn it to the plaintiff, yet, owing to the state of the market and demand for the goods, it could make profitable use of the twine, and therefore consented to waive this objection. No one will deny that in such case the purchaser would be liable to the plaintiff to pay for the goods, either in full or with proper abatement for damages. Its liability to pay this amount is a liability arising upon the terms of the written order, and is the very liability which the appellant has undertaken to secure by his guaranty. So long as the contract secured by the guaranty remains unchanged, the liability of the unconditional guarantor is coextensive with the liability of the principal debtor. *Benjamin v. Hillard,* 23 How. 149 (16 L. Ed. 518). The return of a part of the twine received from the plaintiff did not work any change in the contract embodied in the order. The implied warranty of quality, and the resultant right of the buyer to return the defective twine, inhered in the contract as made, and as secured by the guaranty. The return of the twine and the giving of proper credit therefor was no more a material alteration of the contract of purchase than would have been the payment of like sum in money. Quite similar in principle to the case at bar is *Rice v. Filene,* 6 Allen, 230. In that case goods were sold to a dealer upon the guaranty of the defendant. Some of the goods proved unsatisfactory and were returned, but afterward, upon allowance of a discount, were accepted by the purchaser. It was held that this did not effect a release of the guarantor. Bearing in the same direction, see *Feustmann v. Gott's Estate,* 65 Mich. 592 (32 N. W. Rep. 869); *Quinn v. Moss,* 45 Neb. 614 (63 N. W. Rep. 931). Under the terms of the order as guaranteed by appellant, the purchase price of the twine, aggregating $3,843.75, was to be paid one-half October 1st, and one-half November 1st. After giving credit for the twine returned and freight paid, there remained unpaid the sum of $2,280.85, for which plaintiff received the company's two notes, of $1,140.40 each, due October 1st and November 1st after date. This, counsel say, was a material change in the terms of the contract, for, it is ingeniously ar-

gued, counting the price of the returned twine as a payment on the account, the net result of this transaction was to so rearrange and modify the agreement as to permit plaintiff to obtain about three-fourths of his entire claim on or before October 1st, instead of one-half, as was originally agreed. But the agreement to divide the payment into two installments did not necessarily apply to the full sum of $3,843.75, unless, upon an adjustment of plaintiff's claim according to the terms of the order, he was legally entitled to receive the same; and if, upon such adjustment, a lesser sum was found his due, it was upon the basis of such sum that the installments were to be determined. While the contract contemplated a maximum credit to the corporation of the larger sum named, yet the actual indebtedness incurred by the order, the amount for which plaintiff was entitled to demand and enforce payment from the company, was the smaller sum, and the terms of payment were in no manner changed. In short, the goods were sold the company upon the credit given to it by the appellant's guaranty. Neither the company nor the appellant suffered any injury by the defective quality of a part of the twine. Neither is asked or required to pay for any part of the shipment, save that which complied strictly with the terms of the order, and of which the company has had the benefit. There is no hardship in requiring the debtor to pay an honest debt according to the terms of his contract, and in default of such payment there is no injustice in requiring the guarantor to make good the claim to the creditor. The purpose of a guaranty is to protect the party extending credit on the strength of such assurance, and while the guarantor's contract obligations will not be extended by implication, and while all conditions, if any, which are precedent to his liability, must always be observed, yet courts should not indulge in subtle reasoning or fanciful theories to discover methods by which such contracts may be rendered valueless. The trial court did not err in directing a verdict for the plaintiff.

II. A motion to dismiss the appeal in this case presents a question of practice which is of considerable importance. It appears that, within a few days after the entry of judgment in the district court, an appeal to this court was perfected, but, for reasons not material to this opinion, the appellant on December 23, 1902, filed in the office of the clerk of the district court a dismissal of said appeal, and on the following day filed in this court a certified copy of the judgment below, and a voluntary dismissal of the appeal taken, as above stated. After the dismissal had been thus affected, the appellant at once, and (as claimed) still within six months after the date of the judgment in the district court, again served notice of appeal; and it is upon this latter service that the case is now before us. The appellee takes the position that the taking of the first appeal and the dismissal thereof exhausted the appellant's right to a review of the case in this court. Stated briefly, the question is, may an appellant voluntarily dismiss an appeal once perfected, and thereafter, and within six months from the date of the judgment sought to be reviewed, take a second appeal? We are inclined to hold in the affirmative. There would seem to be no good reason for denying such right, and, as we shall see, the practice finds much support in the decisions of the courts. The statute allows a party six months in which to take an appeal. Experience has demonstrated that lawyers are not wholly exempt from liability to mistakes, and if, having attempted to effect an appeal, counsel find that by some error or oversight their appeal is likely to be lost without a hearing upon its merits, and the statutory limitation has not yet run, why should they not be allowed to take advantage of this *locus poenitentiae* to dismiss the ineffectual appeal and begin anew? By analogy with the right freely exercised to dismiss an original action and to renew the same, it would seem that such practice is entirely legitimate. Among the cases in which this question has been directly or inferentially passed upon, see *Harris v. Ferris*, 18 Fla. 81; *Sanders v. Moore*, 52 Ark. 376 (12 S. W. Rep.

2. APPEAL: dismissal: second appeal.

783); *Garrick v. Chamberlain*, 97 Ill. 620; *Beller v. Stevens*, 40 Mich. 168; *Power v. Frick*, 2 Grant, Cas. 306; *Martinez v. Gallardo*, 5 Cal. 155; *Williams v. La Penotiere*, 26 Fla. 333 (7 South. Rep. 869); *Roberts v. Tucker*, 1 Wash. T. 179; *Tex. R. Co. v. Hare*, 4 Tex. Civ. App. 18 (23 S. W. Rep. 42); *State v. McFarland*, 38 Kan. 664 (17 Pac. Rep. 654); *Marshall v. R. R.*, 20 Wis. 644; *Long v. Emery*, 49 Ind. 200; *Ward v. Hollins*, 14 Md. 158; *Roebuck v. Duprey*, 2 Ala. 352; *Evans v. Bank*, 134 U. S. 330 (10 Sup. Ct. Rep. 493, 33 L. Ed. 917). This last case, with others cited in Rose's Notes thereto, is directly in point.

Finally it is insisted that the last appeal was not in fact taken within six months from the entry of the judgment below. The notice was served December 27, 1902. In the appellant's abstract and in the appellee's first amended abstract the statement is made that the judgment was entered June 28, 1902, and, if this be correct, the appeal was timely. Appellee now seeks to withdraw that concession and take advantage of an apparent confusion or clerical mistake in the clerk's record. The order directing a verdict for the plaintiff was entered on June 11, 1902. A motion for new trial was submitted on June 14, 1902, but was not ruled upon until June 28, 1902. In the journal record of the last-named date appears the ruling on the motion, and an order for judgment for the plaintiff. This is followed in the same day's record by an entry of judgment pursuant to the order of the court, but such entry begins with the recitation, "Now, on this 21st day of June, 1902, this matter comes on for hearing," etc. It would appear that counsel or the court had prepared a written form of entry in anticipation that the motion for a new trial would be disposed of on June 21st, and that this same form or memorandum was made use of on June 28th; the correction in the date being inadvertently omitted. It is perfectly clear that the clerk's journal entry, which is the only competent evidence of the judgment, was made June 28, 1902, and the time for appeal must date therefrom. *Ken-*

*nedy v. Bank,* 119 Iowa, 123.   The motion to dismiss the appeal is not well taken.

The cost of twenty-six pages of printed matter filed in this court will be taxed to the appellee.   Other costs taxed to the appellant.

The judgment appealed from is AFFIRMED.