W. J. PILKINGTON, Appellant, v. I. A. POTWIN, Appellee.

Appeal: SECOND APPEAL: EFFECT. Where a sufficient notice of appeal
1  has been filed and the appeal perfected, a subsequent appeal by the same party is nugatory.

Same: NOTICE OF APPEAL: SUFFICIENCY. A notice of appeal must be
2  addressed to the adverse party to give the court jurisdiction; and

where the adverse party is designated in the pleadings by his initials rather than by his Christian name the initials become a material part of the name and a mistake therein in the notice is fatal, although referring to the book and page where the judgment appealed from is recorded. Thus a notice addressed to I. A. Potwin and served on his attorney is not sufficient to give jurisdiction over I. N. Potwin.

**Same:** SECOND APPEAL. The appellant may dismiss an appeal once perfected and thereafter and within six months from the date of the judgment take a second appeal; and the fact that the first appeal was not dismissed until after the second one was filed was not prejudicial, where it appeared that the first notice was invalid because it did not correctly set out the appellee's name and the proceedings were treated as wholly distinct.

**Same:** DISMISSAL OR AFFIRMANCE OF APPEAL. Under the statute providing that the appellee may file a motion to affirm the judgment or dismiss the appeal the motion must be in the alternative; and if the motion asks only an affirmance the appellee cannot complain that the court did not rule upon it, but permitted the appellant to dismiss the appeal.

**Officers de facto:** NOTARY PUBLIC. Where one acting as a notary public in fact held no commission, the application having been denied because incomplete, a single official act, the validity of which was attacked, was not sufficient to constitute such person an officer de facto; as it did not show an exercise of official functions for such length of time as is calculated to induce people to believe that such person was in fact the officer he assumed to be.

**Intoxicating Liquor:** CONSENT PETITION: DEFECTIVE ACKNOWLEDGMENT: CURATIVE ACT. The legislature has power to provide for the filing of consent petitions to the sale of liquor without verification by the signers, and could therefore by a proper curative act validate petitions defectively verified; but the curative act of the 34th General Assembly entitled ''An Act to Legalize the Official Acts of certain Notaries Public,'' providing that the acknowledgment of affidavits by notaries were legalized the same as though the notaries had been duly commissioned at the time they were taken, did not dispense with the statute requiring that petitions of consent to the sale of liquor must be verified, in a given action then pending.

**Same:** INTOXICATING LIQUORS: CONSENT PETITION: VERIFICATION: CURATIVE ACT. The general law provides that petitions of consent to the sale of liquor must be accompanied by the affidavit of some reputable person, showing that such person personally witnessed the signing of each name appearing thereon; and where a petition

was thus sworn to before a person not commissioned as a notary public and not even a de facto officer, a curative act legalizing the official acts of notaries public before their commissions had issued, did not give validity to a petition thus verified.

*Appeal from Polk District Court.*—HON. JAMES P. HEWITT, Judge.

SATURDAY, NOVEMBER 22, 1913.

ON December 17, 1910, I. A. Potwin filed with the auditor of Polk county, Iowa, a statement of general consent to sell intoxicating liquors in the city of Des Moines. Said statement was canvassed by the board of supervisors and by it held sufficient on January 18, 1911. From this finding the plaintiff, W. J. Pilkington, a citizen of Des Moines, appealed to the district court. The cause was tried in the district court, and on November 6, 1911, said court made a finding of facts and conclusions of law. Among other things the court found that at the general election in 1910 there were cast in said city 13,435 votes, and a majority thereof is 6,718; that the statement of general consent filed with the county auditor contained in all 8,450 names, 1,187 of which were invalid because some of them were not on the poll list, some were withdrawn, others signed a name different or slightly different from his true name; that there were some who signed their true names but the signatures were changed since the names were signed, but that there was no evidence as to when or by whom the changes were made; that some did not correspond with the names having the same ward and precinct number on the poll list; that some were signed without being verified and accompanied by a sufficient affidavit; that some were duplicates; that there were 7,263 valid signatures, or 545 more than a majority; and that the statement was sufficient. Plaintiff appeals.—*Reversed.*

*Popham & Havener,* for appellant.

*E. T. Morris, T. L. Sellers, Guernsey, Parker & Miller,* and *Thomas J. Guthrie,* County Attorney, for appellee.

PRESTON, J.—I. Appellee's motion to affirm, which was submitted with the case, will be first disposed of. It is finally conceded in the record that defendant's name is I. A. Potwin. Appellant first served a notice of appeal December 9, 1911, as follows:

In the District Court of Iowa, in and
for Polk County.
W. J. Pilkington v. I. N. Potwin.
Notice of Appeal.

To I. N. Potwin, or to Thomas Sellers, E. T. Morris, Guernsey, Parker & Miller, Attorneys for Defendant, and to the clerk of the District Court in and for Polk County, Iowa: You and each of you are hereby notified that W. J. Pilkington has appealed from the whole of the judgment rendered in the above-entitled case, which judgment is found of record in District Court Journal 93, at pages 518 and 519, of Polk county, Iowa, and has appealed from each and every ruling made throughout the trial of said cause made adverse to said W. J. Pilkington. Said appeal will come on for hearing at the January term of the Supreme Court of Iowa, which court convenes on the second Tuesday of January, 1912. Popham & Havener, Attorneys for W. J. Pilkington.

The acceptance of service by the attorneys was as follows:

State of Iowa, County of Polk—ss:
We, the undersigned, attorneys for I. N. Potwin, hereby accept service of the foregoing notice of appeal and acknowledge receipt of two copies of the same this 9th day of December, A. D. 1911. Guernsey, Parker & Miller, E. T. Morris, T. L. Sellers, Attorneys for I. N. Potwin.

The name I. N. Potwin, as it first appears in the acceptance, is written or printed with a typewriter and was evi-

dently prepared by counsel for appellant; the same name, as it appears after the signatures of counsel, is written with pen and ink and appears to be (from an inspection of the original which has been certified) in the same handwriting as the signatures of counsel. It should be observed that the notice is not addressed to I. A. Potwin, nor does that name appear in the notice or acceptance, and attorneys do not accept service for such a person or for the defendant. The case was docketed in the office of the clerk of this court as No. 28,829.

Another notice of appeal was served May 9, 1912, and is entitled W. J. Pilkington, Plaintiff, v. I. A. Potwain, Defendant, and is addressed to I. A. Potwain, or I. A. Potwin, or L. A. Potwain, or I. N. Potwin, or attorneys of record, etc. The body of this notice is substantially the same as the first one, except that in it this clause appears: "In some places in the record in the above entitled cause the name of the defendant is written I. A. Potwain, I. A. Potwin, I. N. Potwin, or L. A. Potwain, but all of said names are intended for one and the same person." The attorneys accepted service for defendant. Under this notice the case was separately docketed here as No. 28,926. This was served within six months from the date of the judgment.

July 20, 1912, appellee filed a motion to affirm, under rule 39, section 4120, of the Code, on the ground that the notice of appeal was served and filed December 9, 1911, and that the first term of the Supreme Court convening thereafter was January 9, 1912, and the second term thereafter convened on May 7, 1912; that the second term after notice of appeal was served was the May term, 1912, and appellant has failed to file an abstract of the record. A copy of the first notice of appeal, and the service and return thereof, together with a copy of the judgment, was attached to the motion.

On August 7, 1912, appellant filed a dismissal, to which was attached a copy of the first notice of appeal. The dismissal is as follows:

In the Supreme Court of the State of Iowa.
W. J. Pilkington v. I. N. Potwin.
Dismissal of Appeal under Notice Filed with the
Clerk of the District Court of Iowa, in
and for Polk County, on De-
cember 9, 1911.

To the Supreme Court of the State of Iowa, or to any Judge Thereof, or to the Clerk Thereof: Comes now W. J. Pilkington, appellant in the above-entitled matter, and dismisses his appeal, without prejudice, taken under and by virtue of the notice filed December 9, 1911, with J. P. Maher, clerk of the district court of Iowa, in and for Polk county, said notice and service thereof being in the words and figures as set out in Exhibit A hereto attached. You are hereby directed to make the entry of such dismissal of said appeal in said cause, and this is your authority therefor. Dated this 6th day of August, 1912. Popham & Havener, Attorneys for W. J. Pilkington, Appellant.

This dismissal was filed in the case docketed as No. 28,829. Appellee refiled the motion to affirm. Under date of September 18, 1912, the record is: "First appeal in the case having been dismissed August 7, 1912, the motion of appellee to dismiss the second appeal is overruled." Later a rehearing was granted, and the case now stands on appellee's motion to affirm, and the only ground stated in the motion is that the abstract was not filed in time. Under the statutes and the method therein prescribed for computing time, we think the motion was not well taken on that ground. But it is not necessary to determine that question now because there was a dismissal of whatever rights appellant acquired, if any, under the first notice. The question now, or at least one question, is as to the effect of such dismissal. The question has been fully argued whether, under the entire record, the court has jurisdiction to hear and determine the appeal, doubtless on the theory that such a question may be raised at any stage of the proceedings.

The contentions of the appellee are, substantially, that the first notice was good and was the only valid appeal then pend-

ing; that the mistake in the middle initial of appellee's name did not constitute a defective notice because the notice intelligently referred to the judgment, book and page where recorded; was served upon the attorneys for appellee, and in other respects was sufficient; that appellant dismissed his appeal August 7, 1912; that when an appeal is perfected by service of notice the cause is transferred to this court; that, after an appeal has been perfected, it is pending in this court until dismissed, and, while so pending, the service of a second notice of appeal is nugatory and adds nothing to this court's jurisdiction and is therefore of no force; that he had a right to have a ruling on his motion to affirm and that he may not be deprived of the right to have the Supreme Court exercise its discretion of dismissing or affirming.

Appellant contends that the motion to affirm should be overruled and the case decided upon its merits because the first notice of appeal was not a notice as provided by law; that the first notice of appeal was not addressed to the appellee, I. A. Potwin; that in the first notice of appeal the attorneys accepted service, not as the attorneys for I. A. Potwin, but as the attorneys for I. N. Potwin; that the appellant has a right to dismiss his first appeal, even though appellee's motion for affirmance is filed, and to serve a notice for his second appeal, if the same is done within six months; that, even if the first notice of appeal was sufficient, it had ceased to have any operation or effect when the second notice was served; and that a failure to file the abstract under the first notice for the May term, 1912, caused the first notice of appeal to be of no effect.

It is not disputed by appellant that, where a proper notice of appeal has been served and the appeal perfected, the lower court loses jurisdiction and the cause is transferred to

this court. It has been held that a subsequent

1. APPEAL: second appeal: effect.

appeal by the same party, while such former appeal is pending, is nugatory. *State v. King*, 6 S. D. 297 (60 N. W. 75); *Newbury v. Lumber Co.*,

106 Iowa, 140, 153; *Stutsman v. Sharpless,* 125 Iowa, 335.
In *Newbury's* case the court said that when the second notice
of appeal was served the cause was pending in this court,
and the second notice added nothing to the jurisdiction which
this court then had of the case or to its power to grant relief.
We apprehend this is so because the first notice was sufficient
to give this court jurisdiction. The case cited assumes that
the first notice was good and did give this court jurisdiction.

Was the first notice in the instant case good? Suppose
no other notice had been served within six months, and after
that time appellee had moved to dismiss or affirm on the
ground that no notice had been served on
2. SAME: notice   I. A. Potwin, could appellant now success-
of appeal: suf-
ficiency.         fully resist the motion? We have already
pointed out that the notice was not addressed to him; his
name does not appear in the notice; and the attorneys did
not accept service for the defendant in that action. The no-
tice was directed to I. N. Potwin, and service was accepted
by counsel as attorneys for I. N. Potwin. Appellant contends
that the notice of appeal must be addressed to the party, and
unless so addressed it is insufficient. It has been so held, and
it is the rule where it is sought to obtain jurisdiction. *In re
Anderson's Estate,* 125 Iowa, 670; *Bloom v. Traction Co.,* 148
Iowa, 452; *Steele v. Murry,* 80 Iowa, 336; *Claflin v. Iowa
City,* 12 Iowa, 284.

The statute (section 4114) provides that an appeal is
taken and perfected by the service of notice in writing on
the adverse party, his agent or attorney, etc. Appellant con-
tends that a notice of appeal addressed to I. N. Potwin is
not sufficient to give this court jurisdiction over I. A. Potwin.
A person's initials may be used, and, when this is done they
will be treated as the Christian or given name. In such
case "W. E. Geller" is not "W. C. Geller," nor is "C. E.
Jones" "E. C. Jones." *Porter v. Butterfield,* 116 Iowa, 725,
731. The rule seems to be that, where the first name is given,
the middle name or initial is not a material part of the name,

but such is not the case where a person's initials only are used. Thus the second initial "F," in the name "M. F. Higgins" is a material part of the name. *State v. Higgins*, 60 Minn. 1 (61 N. W. 816, 27 L. R. A. 74, 51 Am. St. Rep. 490). In that case it was said that no one would understand the name "M. F. Higgins" to mean the same person as "M. J. Higgins." The cases are not in entire harmony on this proposition, but we are of opinion that this is the better rule.

In the *Anderson* case, 125 Iowa, 670, Alfred Carter was the successful party in the district court. The interveners attempted to appeal, and it was necessary to serve notice on Carter. The notice was properly entitled, was in proper form, and refers intelligently to the judgment, but was addressed only to Sylvester Green, administrator, or to Levi Keck, his attorney, and to the clerk. Service of such notice was had only by acceptance by Levi Keck, attorney for Alfred Carter, and by the clerk. The court said: "As a notice to the defendant Green and to the clerk, it was undoubtedly sufficient. But not so, as we think, with respect to any parties to whom the notice was not addressed." The case is directly in point and is stronger than the present case to sustain the notice, because here the notice was not addressed to I. A. Potwin, nor was the acceptance had by attorneys for I. A. Potwin, or for the defendant, whatever his name might be, but was had as attorneys for I. N. Potwin. We hold that notice addressed to I. N. Potwin and acceptance of service for I. N. is not notice to I. A. Potwin, and the notice was not sufficient to give this court jurisdiction. The fact that the notice refers to the book and page where the judgment is recorded is not material and does not change the rule that the notice must be addressed to the proper person. It was not necessary to refer to the book and page. The judgment could have been otherwise referred to, and in such case the opposing party could have turned to the judgment record and found the name of the party against whom, or in whose favor, the judgment was rendered. The judgment must be

sufficiently referred to in the notice to identify the judgment, but the notice should be addressed to the person to be served in order to guide the person making the service and to identify the person served. *Steele v. Murry, supra.* Our holding at this point is not in conflict with the cases cited by appellee.

II.    It was held in *Groendyke v. Musgrave,* 123 Iowa, 535, 541, that an appellant may voluntarily dismiss an appeal once perfected and thereafter, and within six months from date of the judgment, take a second appeal. See, also, *In re Estate of Clark,* 151 Iowa, 511; *Stutsman v. Sharpless,* 125 Iowa, 337. We are unable to see how an appellee could be prejudiced by such practice. Six months is allowed for an appeal; if the second appeal is taken within six months, the case would not be different than it would have been had the first appeal not been taken at all. In the *Groendyke* case it was contended, as it is in this case, that the taking of the first appeal and dismissal thereof exhausted the appellant's right to a review in this court. In that case there was no question as to the sufficiency of the first notice. If an appeal may be dismissed where the first notice was good, and a second appeal taken thereafter, it clearly may be done where the first notice is insufficient.

*3. SAME: second appeal.*

Under the facts of this case, the fact that the dismissal of the first appeal, or attempted appeal, was not had until after the service of the second notice is not material. The cases were docketed separately; the dismissal clearly shows that it was appellant's intention to dismiss only as to the first, and appellee could not have been misled or prejudiced.

It is apparent that appellant was in doubt as to the true name of the defendant and was in doubt as to whether the first notice was sufficient because of the error in the name. To make sure, he started over again. There is nothing to show bad faith, and there has been no prejudice. The right of appeal is a valuable one, and litigants ought not to be deprived of the right on technical grounds.

III. Appellee contends that he had a right to have a ruling on his motion and could not be deprived of the right by the dismissal. He argues that appellant cannot deprive him of his right to have the Supreme Court exercise its discretion of dismissing or affirming. But appellee put it beyond the power of the court to exercise such discretion, or attempted to do so, by the form of his motion. The motion does not ask that the appeal be dismissed or that the judgment be affirmed. His motion is to affirm, because the abstract was not filed in time and was filed under section 4120 of the Code, which provides for a dismissal or affirmance. By this appellee sought to make the election by asking only for an affirmance. Ordinarily a dismissal of the appeal has the same effect as an affirmance of the judgment and leaves the judgment of the lower court stand. In this case an affirmance would doubtless prevent another appeal, even though the six months allowed for an appeal had not expired.

4. SAME: dismissal or affirmance of appeal.

In the *Newbury* case, 106 Iowa, 140, 153, it was said: " . . . Appellee does not have the absolute right to elect which remedy he will have. It is the customary and approved practice for the appellee to ask in the alternative that the judgment or order appealed from be affirmed, or that the appeal be dismissed, and when that is done, and the appellee is entitled to relief asked, this court grants that form of relief which seems to be best calculated to do justice."

In *Clark's* case, 151 Iowa, 511, it was held that rule 37 (now 39, Code, section 4120) does not give an appellee a right of affirmance as distinguished from a right of dismissal. If appellee had, by his motion, asked alternative relief, and the court would have held the motion good and ordered a dismissal, or if under section 4120 of the Code a motion to affirm is equivalent to a motion to dismiss, appellee would have no ground for complaint, because appellant asked and filed a dismissal. In such a case both would be asking the same thing, and it would be equivalent to a dismissal by appellant, with the consent of appellee.

It is unnecessary to pursue the subject further. We think the point now under consideration is ruled by the holding in the *Clark* case. As we understand appellee's argument, he concedes this to be so, but he asks us to overrule it. We are not disposed to do so. In our opinion appellee's motion to affirm ought to be and it is overruled. We will now proceed to a consideration of the merits of the case.

IV. The case is complicated. We are told that the trial in the district court consumed several months' time. The printed record before us contains 998 pages. Several arguments have been made, more than the rules allow, but, as there has been no motion to strike, we have laboriously and carefully examined the entire record and endeavored to get at the real merits. We have thought it advisable to not set out the evidence at the start but will refer to so much of it as seems necessary in determining each point and in connection therewith.

It appears that certain of the canvassers made affidavit that they witnessed the signing of the names on the statement of consent before one Bessie L. Cohen, notary public. Such affidavits are dated November 19, 1910, and 1,900 names are contained therein. Said Bessie L. Cohen was not actually commissioned as a notary until March 16, 1911. It is contended by appellee that at the time the affidavits were made before her she was a *de facto* officer, and further that her acts were legalized in April, 1911, by the Legislature. Chapter 229, 34th General Assembly. The statement was held sufficient by the board of supervisors on January 18, 1911. The appeal to the district court was taken January 19, 1911. The trial in the district court commenced June 26, 1911. Appellant contends that under the circumstances said Bessie L. Cohen was not a *de facto* notary, and that the Legislature had no power to legalize her acts because, as he says, it was an attempt on the part of the Legislature to interfere with the jurisdiction of the court, once attached, for that the matter had been decided by the board of supervisors and the

appeal to the district court perfected, prior to the attempt to enact the statute, and for the further reason that it attempts to declare an instrument, wholly void, to be valid. He also says that certain rights of the community had become vested with which the Legislature could not interfere, and that the defects were jurisdictional and could not be cured by a healing act.

V. We shall first consider the question as to whether or not said Cohen was a *de facto* officer. The facts in regard to her appointment and her acting as notary, briefly stated, are that on November 9, 1910, she made ap-

5. OFFICERS DE FACTO: Notaries Public.

plication to the Governor for appointment as a notary public in and for Polk county, Iowa. She procured a seal, executed a bond, on which was her signature and an impression of her official seal. The application and bond, together with the $5 fee required by law, were forwarded to the Governor, but she neglected to procure a recommendation by an officer, as required by the rules of the Governor's office. The bond and fee were received and retained, but the commission was not issued because the requisite recommendation had not been procured. On November 14 or 15, 1910, the application was returned to her in a large envelope from the Governor's office, which she opened and says she supposed it to be her notary commission. The affidavits in question were made four days after, to wit, November 19, 1910. She testifies that at that time she believed she was a notary actually commissioned. She did not discover that the commission had not issued until so informed by letter while she was at Creston, Iowa, in March, 1911. She then examined her application more carefully and found a notation thereon that the application should contain a recommendation by certain officers. Thereupon she procured the recommendation of two county officers and mailed the application back to the Governor. Her commission was issued and received by her March 16, 1911. She had not acted as a notary prior to November 9, 1910. After the application was returned to

her in November, she acted as a notary public in about four instances, other than the affidavits in question, but it does not appear that any of them were prior to November 19, 1910, when the questioned affidavits were made. When she made out her application she was in the employ of the Des Moines Retail Liquor Dealers' Association and made her application at the request of the manager. She was in their employ until after the statement of consent was held sufficient by the board of supervisors, doing stenographic and office work for them, besides taking these acknowledgments for the saloon men. In our opinion she was not an officer *de facto*. It is probably true she believed she had been duly commissioned, and she had done everything required by section 374 of the Code so far as she was concerned. The question is: Was she an officer *de facto* on November 19, 1910, when these affidavits were made? It is to be observed that she did not assume to act as a notary for more than four days prior to that date, and then only as to this transaction in question.

In *Keeney v. Leas*, 14 Iowa, 464, the notary's commission had been issued but had not been recorded as the statute then required. The court said: "The power to act is derived from the appointment or election; and therefore, when it is once shown that he had this authority (and this is presumed in a public officer who is found in the discharge of his duties), a failure to comply with all the directory provisions of the statute in relation to his qualification will not in a collateral proceeding invalidate his acts."

In *Buck v. Hawley*, 129 Iowa, 406, it was held that it is not necessary that a person have color of office in order to constitute him an officer *de facto*, but that an intruder may exercise official functions under such circumstances for so long a time without interference as to justify the belief that he has been elected or appointed, but it was further held in that case that: "In the absence of any color of appointment or election, the party to be treated as a *de facto* officer must have acted as such under such circumstances of reputation or

acquiescence as are calculated to induce people, without inquiry, to submit to or invoke his action in the supposition that he is in fact the officer he assumes to be. Manifestly proof of the very act concerning which the controversy has arisen cannot be regarded as sufficient to indicate his authority to perform it.'' This authority seems to be directly in point as applied to the facts in this case. See, also, *Herkimer v. Keeler,* 109 Iowa 683; *Smith v. Cansler,* 83 Ky. 367; *Brown v. Lunt,* 37 Me. 425; *Attorney General v. Crocker,* 138 Mass. 218.

VI.   The curative act passed in April, 1911, is as follows:

An act to legalize the official acts of certain Notaries Public.

Whereas certain notaries public whose commissions expired July 4, 1909, and who have continued to act as such notaries public after the expiration of such commissions and who have since qualified as such notaries public, and whereas, certain notaries public in the state of Iowa under a misapprehension as to the date when their commissions were issued as notaries public, did, prior to the 17th day of March, 1911, and before their commissions had actually been issued, take certain acknowledgments and administer certain oaths, and whereas it is the desire of all such notaries public to have their official acts as such notaries public legalized, now therefore: Be it enacted by the General Assembly of the state of Iowa:

Section 1. Official Acts Legalized—Pending Litigations.— That all acknowledgments of all written instruments, affidavits, deeds, mortgages, papers and documents by notaries public as described in the preamble hereof, whether, or not the same is required by law to be acknowledged, and all taking of affidavits made by notaries public, be, and the same are hereby legalized and made valid the same as though they had been duly commissioned as notaries public at the time such acknowledgments were taken, provided this act shall not apply to title to real estate, or other property rights which are now in litigation.

Sec. 2. This act being deemed of immediate importance shall be in force and effect from and after its publication in the Register & Leader and Des Moines Capital, newspapers

published at Des Moines, Iowa. Approved April 13, 1911. Published April 17, 1911.

In view of the conclusion we have reached, and which is decisive of the case, we deem it unnecessary to discuss some of the points in regard to the curative act which the appellant contends make it invalid. These are in substance that rights had vested so that the Legislature could not make valid the acts of the person assuming to act as notary; that the affidavits made before Bessie L. Cohen were jurisdictional, and that for that reason the Legislature could not interfere; the power of the Legislature to pass a curative act; whether the person making the alleged affidavit could be punished for perjury; whether the curative act is retroactive; and whether by its terms it assumes to or could operate *ex post facto*. These are the points specifically relied upon by appellant as error and which he claims rendered the curative act invalid. These matters have been fully argued by both appellant and appellee. The writer thinks that there is no argument from either side as to any other question in regard to the validity of the curative act. The other members of the court think, however, that as the validity of the curative act is challenged, there is some argument upon the point about to be considered, which they think is involved in the above points and is sufficient to require consideration and determination. Neither party has cited any authority on this proposition; and, as stated, I think it has not been argued. The question is, conceding that the Legislature had the power to cure the defects in the proceedings in this case, whether it did, by the language used, do so, and whether it was the intent of the Legislature, gathered from the wording of the act, to cover a situation such as this. That is to say, did the Legislature by the curative act validate the proceedings because of the defect in the affidavits verified before Miss Cohen?

We are of the opinion that if the Legislature had undertaken to cure the defects in the proceedings in this case from

the beginning by the usual preamble and recitals, which are
the necessary accompaniment of every cura-
tive act, it could have done so, for the Legis-
lature may cure any defect which it might
originally have dispensed with. That is to
say, it could have authorized the filing of consent petitions
without any verification, and, as it could have done this, it
might, by a curative act, validate any and all proceedings
where there are defects in the affidavits.

G. INTOXICATING
LIQUOR: con-
sent petition:
defective ac-
knowledgment:
curative act.

But the Legislature did not attempt to do this in this
case either directly or indirectly. There is no reference to
any proceedings under the "mulct statute," and neither the
body of the act nor the preamble contains anything with ref-
erence to proceedings under the mulct law. That is left, as
it always was, not only for this case but for every other
which may arise in the future. In considering this case we
must apply the mulct law as it is written on the statute books,
and by no fair method of construction are we justified in
holding that the Legislature intended to cure the admitted
defects in this proceeding. The enacting part of the statute
simply says: "That all acknowledgments of all written in-
struments, affidavits, deeds, mortgages, papers and docu-
ments, by notaries public as described in the preamble hereof,
whether or not the same is required by law to be acknowl-
edged, and all taking of affidavits made by notaries public,
be and the same are hereby legalized and made valid the
same as though they had been duly commissioned as notaries
public at the time such acknowledgments were taken: Pro-
vided this act shall not apply to title to real estate or other
property rights which are now in litigation." This language
is clear and unambiguous. If it were not, we may turn to
the preamble and the recitations therein to determine the
legislative intent. These read:

An act to legalize the official acts of certain Notaries Public.

Whereas, certain notaries public whose commissions ex-
pired July 4, 1909, and who have continued to act as such

notaries public after the expiration of such commissions, and who have since qualified as such notaries public, and, whereas, certain notaries public in the state of Iowa under a misapprehension as to the date when their commissions were issued as notaries public, did, prior to the 17th day of March, 1911, and before their commissions had actually been issued, take certain acknowledgments and administer certain oaths, and, whereas, it is the desire of all such notaries public to have their official acts as such notaries public legalized, now therefore, etc..

This is the entire act, and it would not do to say that it was intended to, or did, cure the defects in statements of consent, in a given action. then pending, and dispensed, in that case, with the law as it stood and still stands.

We have the simple question: May a paper which is not an affidavit and which required something more than the act of a notary, or a paper which is not a deed requiring the concurrence of contracting parties, be converted in the first instance into an affidavit or into a valid deed in the second? Under the guise of a curative act, the Legislature cannot make an invalid deed or other instrument valid. It may, of course, cure a defective acknowledgment of a deed, unless the acknowledgment is essential to the validity of the instrument as between the parties. The only reason why curative acts validating defective acknowledgments of written instruments is held valid is that the acknowledgment does not affect the validity of the instrument between the parties thereto. If it operates upon the deed or contract itself and creates a right or obligation that did not theretofore exist or alters the terms of an existing contract it is invalid, for the reason that the Legislature cannot, as a rule, create a contract for parties or change the obligation of an existing one.

In *Menges v. Wertman*, 1 Pa. 218, Chief Justice Gibson, speaking for the court, said: Where "the purchaser has paid for land," and "the prior owner" is consequently "under a moral obligation to convey, . . . the Legislature" may constitutionally give effect to this moral obligation against

such owner, his heirs, his widow, etc., "but I trust that we [the courts] shall never go further."

The validity of retroactive laws is generally based upon a legal or moral obligation and does not extend to the making of new contracts. We have consistently followed this rule. See *Bresser v. Saarman*, 112 Iowa, 720; *Goodykoontz v. Olsen*, 54 Iowa, 174; *Greenwood v. Jenswold*, 69 Iowa, 53.

In the *Goodykoontz* case the Legislature attempted to legalize defectively acknowledged tax deeds; but the court held that, as the law required an acknowledgment of a tax deed to make it valid, the Legislature could not cure the defect. In that case the court said:

The appellees, however, insist that, even if this is so, the acknowledgment must be deemed good now, because by section 2, chapter 160, of the Acts of 1870, all acknowledgments of deeds which had been duly recorded were legalized. Whether it was competent for the Legislature to pass an act which should have the effect to divest a title where nothing had been done by the owner with that intent, we need not determine. It is manifest that to uphold such legislation would be going very far. But the act in question does not necessarily embrace that class of acknowledgments which by statute are virtually made a part of the execution of a deed and without which there is no deed. We ought to be cautious about putting a doubtful construction upon a statute if, when so construed, it would become of doubtful constitutionality. Now the class of acknowledgments under consideration is a very narrow one. It may well be believed that the Legislature did not have it in mind at all. It is true the language is, 'That the acknowledgments of all deeds . . . are hereby declared legal;' but we think that the act was designed to apply only where there was a legal deed antecedent to any attempted acknowledgment. We think, therefore, the curative act does not apply.

It seems to us this case establishes the principle which must govern here.

In the *Greenwood* case the defectively acknowledged deed was not signed by the grantor, nor was any consideration expressed, and the court held that, as the record failed to show a valid conveyance, the curative act did not apply.

In the *Bresser* case it is said: "The assent of the parties themselves, properly expressed, is a prerequisite to the legalization of a defectively acknowledged contract." This is the rule of the cases generally. *Robinson v. Barfield*, 6 N. C. 391; *Fugman v. Jiri Bldg. Co.*, 209 Ill. 176 (70 N. E. 644); *Grove v. Todd*, 41 Md. 633 (20 Am. Rep. 76); *Alabama Trust Co. v. Boykin*, 38 Ala. 510; *Ryan v. Carr*, 46 Mo. 483; *Good v. Zercher*, 12 Ohio, 364; *Holland v. Votaw* (Tex. Civ. App.) 130 S. W. 882; s. c., 103 Tex. 534 (131 S. W. 406).

Other cases might be cited to the same point, but these are enough to show the grounds upon which curative acts are sustained and the underlying principle which should govern at this point. If this be the rule as applied to deeds or contracts, how is it possible for the Legislature to make out of a paper which is not an affidavit, because not sworn to before one having authority to administer oaths, a valid affidavit? As applied to affidavits, the curative act in question is invalid. When made, the paper was not an affidavit, because not sworn to before one with authority, and it is impossible for the Legislature to make it such. As this is all the curative act undertook to do, it is clear that it is invalid and does not apply.

7. INTOXICATING LIQUORS: consent petition: verification: curative act.

The *Goodykoontz* case bears a close analogy to this in that the Legislature might have made a tax deed valid, although not acknowledged. But it was held in that case that a curative act validating acknowledgments of all instruments in writing, acknowledged prior to a given date, did not apply to tax deeds, for the reason that acknowledgment was essential to the validity of the deed. In other words, as there was no attempt to change the law with reference to the acknowledgment of tax deeds, the healing act could not be construed as dispensing with that requirement.

So in this case the Legislature did not attempt to change the provisions of the mulct law with reference to the necessity of an affidavit to the statements of consent to the sale of in-

toxicants, and it could not by curative act make an affidavit out of something which was not such when executed. The statute requires that the statement of general consent shall be accompanied by the affidavit of some reputable person showing that said persons personally witnessed the signing of each name appearing thereon. Bessie L. Cohen was not a notary and could not administer such oath. She was not a *de facto* officer. The act of the Legislature did not cure the defect in the proceedings by reason of the purported affidavits made before Miss Cohen. As 1,900 names were involved, which must be deducted, it follows that the statement of general consent is not sufficient.

This conclusion renders it unnecessary to discuss a number of other propositions which have been elaborately argued. For the reasons stated, the statement of general consent is not sufficient.

The judgment of the district court is therefore *Reversed.* All the Justices concur in the result.