In the Matter of the Estate of W. G. CLARK, Deceased, Cases Nos. 4040, 4041, 4042, 4070, and 4072 Consolidated.

**Appeal:** MOTION FOR AFFIRMANCE: SECOND APPEAL. A perfected appeal may be dismissed and a second appeal may be taken if within the statutory time; and this right is not affected by the filing of a motion for affirmance prior to a dismissal of the first appeal.

**Estates of decedents:** ACCOUNTING BY EXECUTOR: ISSUES OF FACT: TRIAL *de novo.* A proceeding in probate is not triable *de novo* on appeal; and where an issue was injected into an executor's accounting, as to whether certain payments to heirs of the estate were made as a settlement between the heirs or by the executors in distribution of the estate, the finding of the trial court upon that issue of fact, upon conflicting evidence, was not reviewable.

**Same:** TRUSTS: FOLLOWING TRUST PROPERTY: PROCEDURE. It appears in this proceeding to compel executors and trustees to account

that testator gave his entire estate to his children equally, subject to the life use of his wife, and appointed two of his sons executors and trustees of the legacy to another son; that testator had contracted for a sale of the estate lands to one of his sons who afterward contracted with the brother of whose legacy the trustees were appointed to convey to him forty acres of the land in consideration for his personal services for a series of years; that such services were performed but the conveyance was never made; that subsequently all the heirs, including the one for whose legacy the trustees were appointed, joined in a conveyance of the estate lands in conformity with the father's agreement, and the grantee sold the forty acres and paid the proceeds on his own debt to the trustees who applied the same on an account against him. *Held*, that the son for whose legacy the executors were appointed trustees could not compel them in this probate proceeding to account for the proceeds of the forty acres, as a determination of his right thereto involved an exercise of equitable jurisdiction for the purpose of setting aside his conveyance and impressing a trust upon the land, all of which was foreign to the probate proceeding involving simply a settlement of the estate and liability of the trustees for the legacy.

*Appeal from Monroe District Court.*—HON. M. A. ROBERTS, Judge.

SATURDAY, JUNE 10, 1911.

CERTAIN proceedings were had in the matter of the estate of W. G. Clark, deceased. Separate proceedings were instituted by complaining parties against the executors and against certain trustees named in the will. These proceedings were consolidated for trial. From the finding and order made by the trial court, the executors and trustees have appealed. *Affirmed* in part, and *reversed* in part.

·D. W. Bates and J. T. Clarkson, for appellants.

· J. F. Abegglen and N. E. Kendall, for appellees.

EVANS, J.—The appellee has filed a motion to dismiss the appeal, and such motion has been submitted with

the case.  We must necessarily dispose of it before we can

I. APPEAL: mo-
tion for af-
firmance: sec-
ond appeal.

consider the matters presented by the appeal.  The order appealed from was entered on October 22, 1909.  On November 13 the appellants perfected an appeal to this court.  They failed to file an abstract within the time provided by rule 37. On April 12 the appellees caused the case to be docketed here and filed a motion to affirm.  On April 13, 1910, the appellant filed a voluntary dismissal of said appeal.  Afterwards on April 20, 1910, and within six months from the date of the judgment appealed from appellants served a second notice of appeal and perfected their appeal under such notice.  Appellees' motion to affirm the judgment below upon the first appeal has been heretofore overruled by us.  Appellees' present motion is directed against the second appeal as having been taken without right or authority because of the default of appellants under their first appeal.  We have held heretofore that an appellant may dismiss an appeal once perfected and that he is not thereby precluded from thereafter perfecting a second appeal provided he can do so within the statutory period of six months.  This case comes within that rule.  *Groendyke v. Musgrave,* 123 Iowa, 541; *Stutsman v. Sharpless,* 125 Iowa, 337.

It is argued by appellees that inasmuch as they filed their motion to affirm before the appeal was dismissed they thereby acquired a vested right to such affirmance under rule 37.  Such rule does not give an appellee a right of affirmance as distinguished from a right of dismissal.  This court could doubtless order an affirmance and thus preclude a second appeal.  We will do so in any case where it appears necessary in order to prevent an abuse of the practice of taking a second appeal.  There was no abuse of the rule nor bad faith apparent in this case.  The motion to affirm is, therefore, overruled.  The appellants having voluntarily dismissed their appeal within the stat-

utory six months, there was no obstacle in the way of their taking a second appeal thereafter. Appellants' motion to dismiss the present appeal must, therefore, be denied.

II. This is a controversy among some of the beneficiaries of the estate of W. G. Clark, deceased. W. G. Clark died testate in January, 1890. He left surviving him his widow and twelve children. His will was executed in January, 1887. Under the will the widow took a life use of all the property and the children took one-twelfth each of the remainder. At the time of the execution of the will Edwin L. Clark, the youngest son, was a minor. One provision of the will named three of the older sons, viz., Grant, John, and Homer, as trustees, "to take charge of and control such legacies as may come to Emily R. Clark and Edwin L. Clark by virtue of this my last will and testament, to hold and control such property as may seem best in their judgment, to advance the interest of said legatees, and if in their judgment it should seem advisable to give said legatees control of said estate they are empowered to do so." All the proceedings herein were instituted by Edwin L. Clark. The executors named in the will were the sons. Grant, John, and Frank. In August, 1888, the decedent and his wife entered into a contract of sale of substantially all their property to the sons Homer and Frank. The general nature of such contract is indicated by the following provisions thereof:

This voluntary contract between Wareham G. Clark, Sr., and Jane L. Clark, his wife, parties of the first part, and Homer I. Clark and B. Frank Clark, parties of the second part, witnesseth: When the said second parties shall pay or cause to be paid the sum of seventeen thousand seven hundred dollars ($17,700.00) to said first parties, they, their heirs, agents, assignees or executors agree to deed their farm, free from all incumbrances to said second parties, consisting of about eight hundred and thirty-five (835) acres with all rights, privileges, franchises, live

2. ESTATES OF DE-CEDENTS: accounting by executor: issues of fact: trial *de novo*.

stock, improvements, machinery and all other appurtenances used in connection with said farm and lands, except furniture, bedding, clothing, books, pictures, musical instruments, papers, notions, novelties and control of house and lot as now fenced, but to be used as the farm home as heretofore by said second parties and their help. . . . An indebtedness of about three thousand dollars now owed by said first parties drawing six, seven and eight percent interest will be assumed and paid by said second parties, and the amount of this indebtedness to be deducted from the first named ($17,700.00), and when paid to be duly receipted hereon. On or before January 1, 1899, one thousand four hundred dollars hereof shall be paid and any amount hereof at that time unpaid shall be 'paid on or before nine equal yearly payments thereafter and as an annual rental for said lands, stock, etc., four percent of any amounts thus unpaid (4 percent) will be paid by said second parties to said first parties unless failures of crops or other serious disasters result from said lands, stock, etc., which will extend all during the year or years of their existence from January 1, 1888, so soon as one thousand dollars ($1,000.00) shall be paid hereon it shall be held in advance of any deeds to be made as a forfeit on this contract until the final settlement hereof. Nothing contained herein shall obligate said second parties to pay the amounts named herein to said first party, but if the second parties fail to carry out their part of this contract they shall forfeit their labor or the ($1,000.00) in cash and any and all improvements they may apply to said lands, etc., to said first parties. Pay the said first parties the receipt of seven hundred dollars ($700.00) in labor (up to July 1, 1888), by said second parties is this day duly acknowledged hereon. A perfect deed will be duly executed by said first parties to said second parties when an amount of money placed after each described piece of land is paid less the ($1,000.00) forfeit. Blue Springs land, 240 acres, $1,920; Durham pasture land 200 acres ($2,000.00); B. & M. R. R. land, 40 acres ($320.00); Home place, 355 acres of land, to be deeded at pleasure during first parties' lifetime with personal property, etc., at $13,460.00.

At the time of the death of the testator, the amount

due on this contract had been reduced to $15,343, and this amount represented the testator's entire estate. This contract was inventoried by the executors, and such inventory has never been questioned by any of the parties in interest. At the time of the execution of this contract, and at the time of the death of the testator, that part of his family remaining at home consisted of his wife and Homer and Frank and Ed. and Emily. The four children above named were unmarried; Homer and Frank having charge of the farm. After the death of the testator, the widow and the four children above named continued together as a family in the same home until 1894, when Homer transferred his interest to Frank and left the state. From that date Frank operated the farm and furnished a home for his mother and for Ed. and Emily until the mother's death in 1898. From that date the family consisted of Frank and Ed. and Emily, who occupied the home together until shortly before the commencement of these proceedings. John and Grant were older sons who were engaged in business for themselves, and appear to have been regarded as the active executors and trustees under the will, Homer and Frank being both interested adversely to the estate by virtue of the contract above referred to. No further payment was ever made upon the purchase price by Frank until May, 1907. No steps were ever taken by the executors to enforce the contract nor was any complaint ever made by any of the heirs prior to these proceedings. They were all adult and all understood the condition of the estate. It appears from the record that Frank had not prospered. He was having difficulty to meet his obligations and maintain his home. Forbearance seems to have been extended to him on that account. Under the contract, he was not under personal liability, but was subject only to a forfeiture of $1,000. The periods of payment under the contract extended for nine years after 1899. In May, 1907, all the heirs executed to him quitclaim deeds of the

land and accepted his notes for one-twelfth of the principal sum without interest except that the shares of Ed. and Emily were computed with interest at four percent in accordance with the terms of the contract. In August, 1908, Ed. Clark filed an application in probate court for a citation to the executors to require them to report. He also filed an application that the statutory penalty be assessed against them for their failure to comply with the statute in the matter of reports. He also filed a petition for their removal as executors. He filed similar petitions against the trustees. Every paper filed by him appears to have been docketed as a separate case. All such purported cases were later consolidated as one. The course adopted as to separate docketing has resulted in considerable unnecessary confusion in the record. Further complication has been introduced by the method of trial. There appears to have been two "laps" or "heats" to the trial. The executors answered the citation and filed their report. Objections were filed by Ed. on behalf of himself and Emily. Trial was had. The report was corrected in two particulars, the principal one being that the executors were charged with five percent interest in lieu of four percent. The statutory penalty was imposed. Thereupon a motion was filed by Ed. to reopen the case and to permit him to claim against his trustees an item of $3,200, a more particular reference to which will be made later in this opinion. The motion being sustained and the case thus reopened, two other brothers, Oliver and Press Clark, appeared and filed objections to the executors' reports, and asked that the executors be required to pay each of them interest on their respective shares, they having received only their one-twelfth part each of the principal sum due on the Frank Clark contract. Trial was had upon these objections, which resulted in an allowance to these two brothers of $738 each with interest. The executors com-

plain of this order and we will give it our first consideration.

It was the contention of the executors that the adult heirs, except Ed. and Emily, made the settlement with Frank Clark, and that they each accepted one-twelfth of the principal sum in the form of the promissory notes of Frank Clark. The notes accepted by Oliver and Press were each guaranteed by John and Grant Clark and were afterwards paid. The executors contended that they were thereby exonerated from liability for any interest or for any additional sum by reason of their office as executors. On the other hand, it was contended by the objectors that they received these sums as from the executors themselves and upon representation that it was the full amount due under the contract. The issue between the parties was one of fact at this point, and the finding of the trial court was in favor of the objectors. It is now urged upon us by appellees that this is a probate proceeding and that the case is not triable here *de novo* on appeal. We think this contention must be sustained. Upon the record there is much that could be said favorable to appellants' point of view. The heirs were all adult and well knew the state of the estate. There is no reason apparent why they could not waive the formality of the law and adjust matters between themselves as is claimed by appellants. The financial difficulties of the brother Frank would furnish a strong motive in that direction. But the evidence was clearly conflicting as to the circumstance concerning the acceptance of Frank's notes. It was sufficient to sustain a finding by the trial court either for or against the executors. The finding of the trial court is, therefore, conclusive as contended by appellees. We will not in such a case enter into a consideration of the evidence to such an extent as to determine whether we would agree or disagree with the trial court upon its findings if the case were triable *de novo*. The severe arraignment of the executors which is

·found in appellees' argument is not warranted by the rec
·ord before us, nor is it necessary in order to sustain the
findings of the trial court.   The trial court refused to remove the executors or trustees on the theory that they were
suitable in character notwithstanding their previous default.

III.   We turn now to a consideration of the item of
$3,200, which was claimed by Ed. Clark against the trustees in amended objections filed with a motion to reopen
the case after the first hearing.   This claim
does not arise in any way out of the settlement of the estate of W. G. Clark.   It is
based upon a written contract entered into in August,
1889, between Ed. Clark, on the one hand, and Homer
Clark on the other, Homer Clark purporting to act for
Homer Clark & Bro.   It has been assumed in the argument that Frank Clark was a party to this contract under
the above designation, and we will so construe it.   By the
terms of this contract, Ed. Clark undertook to work for
Homer & Bro. for six years from January 1, 1888, and
was to receive therefor a specified forty acres of land.   It
is claimed by Ed. that he performed the contract, and was
entitled to performance by Frank.   By its terms the contract matured January 1, 1894.   It never was performed.
In May, 1907, this land was included in a quitclaim deed
executed by Ed. to Frank.   In 1908 Frank sold this land
to the Hocking Coal Company for $3,200.   This is the
item for which claim is made in these proceedings.   The
proceeds of this sale were received by John and Grant
Clark and credited to the account held by the firm of
·Clark Bros. (consisting of John and Grant Clark) against
Frank Clark.   The trustees objected to a consideration of
this item in. this proceeding on the ground that it was
entirely foreign to their trusteeship.   They denied that
they had ever received such proceeds in their capacity as
trustees and contended· that they maintained the relation

3. SAME: trusts:
following
trust property:
procedure.

of trustees to Ed. Clark only as to his legacy under his father's will. The trial court held that the trustees were liable for such item not as express trustees under the will, but as "constructive trustees." That is to say, the trial court found in effect that the forty-acre tract in question belonged to Ed. and it impressed a trust upon the proceeds in the hands of John and Grant Clark. In so doing, the trial court was clearly exercising equitable powers. These equitable powers were thus exercised in a mere probate· proceeding which is not triable *de novo* on appeal. The right of Ed. Clark to impress a trust upon the proceeds was dependent in the first instance upon his right to have impressed a trust upon the land as against Frank Clark before the purported sale thereof. Unless as between him and Frank Clark, he could, before the sale, have established his equitable right to such tract, then clearly, he could not have impressed a trust against the proceeds in the hands of John and Grant Clark. It seems to us that the parties were not entitled to inject this controversy into a mere probate proceeding which only involved a settlement of the estate and the liability of the trustees for the legacy coming into their hands from such estate. Whatever *prima facie* merits may appear in this claim, they could only be determined by a suit in equity wherein the equitable powers of the court could be invoked and exercised and wherein the defeated party would be entitled to a trial *de novo* on appeal. There can be no trial *de novo* on appeal in this proceeding. If we were to assume that the question could be heard on the law side of the court or in this probate proceeding, nothing was shown to avoid the statute of limitation which had apparently run in favor of Frank Clark. In order to grant the relief which was granted by the trial court, it would be manifestly necessary to set aside the quitclaim deed already referred to. The order entered by the trial court necessarily had this effect, although it did not purport to do so. Manifestly such

power could not be exercised by the probate court in a matter that is foreign to the settlement of an estate. The trustees in this case are trustees of the special fund only. They are not guardians of the person of the *cestui que* trust nor are they trustees of his estate as a whole. There is no claim that Ed. Clark is *non compos* or that he is under any legal 'disability of any kind except as to the particular legacy bequeathed to him by his father.

We can not undertake upon this record to deal with the merits of this claim. We only hold now that it had no place in this proceeding; that it was no part of the trust created by the will of the father which was assumed by the trustees. If they are liable for such item, it is not because of such trusteeship. This latter statement is in accord with the opinion of the trial court as filed. As respects this item, the order of the lower court must be reversed. In all other respects, its order will be affirmed. The case will be remanded with directions to. the lower court to strike this item of $3,200 as being no part of the sum assumed by the trustees by the will of the testator. *Affirmed* in part; *reversed* in part.