IN RE ESTATE OF ADALINE MOWREY.

ESTELLA BAILEY WEBBER, Executrix, Appellant, v. J. E. HULL, Administrator de bonis non, et al., Appellees.

No. 40324.

924

September 22, 1930.

*C. J. Lambert, Jones & White*, and *McNett, McNett & Kuhns*, for appellant.

*Gillies & Daugherty, Gilmore & Moon*, and *Heindel & Hunt*, for appellees.

MORLING, C. J.—Adaline Mowrey died testate December 18, 1916. Walter A. Lewis and John F. Webber, on February 2, 1917, were duly appointed as executors. They filed inventory December 1, 1917, listing among the general assets 15 shares in the Blakesburg Savings Bank, estimated value $2,400. The total estimated value of the general assets was $31,000. In addition, there were listed in the inventory three mortgages, aggregating $21,955.39, and cash, $513.23. On April 1, 1919, Lewis died. The abstract says that Webber "continued as administrator of the estate, so that, by January 1, 1920, the estate was practically liquidated, and all claims and bequests had been paid. Some claims for the state inheritance tax and some real estate that had been sold on contract apparently had not been entirely adjusted and collected at that time." No report was filed by the executor until May 26, 1925, when, pursuant to application of a legatee and order made thereon, Webber filed the first and only report. This report submitted "the following statement of receipts and expenditures in connection with said estate," in which was included, under date of January 29, 1919, "15 shares of Blakesburg Savings Bank stock, $2,625." Receipts of dividends on that stock preceding that date, but none later, are shown by the report. The expenditures set out include numerous items to John F. Webber and to Roberts & Webber, a firm of attorneys of whom John F. Webber was one. Among these items are, under date of February 4, 1919, "J. F. Webber, $12,000;" under date of January 1, 1918, Roberts & Webber, $202.35; July 9, 1919, Roberts & Webber, $100; July 22d, Roberts & Webber, $200; August 12th, Roberts & Webber, $2,700. Numerous other items of expenditure as having been made to J. F. Webber appear. Mr. Webber was vice president, and later president, of the Wapello County Savings Bank, and was engaged in making and dealing in real estate mortgage loans

and in the practice of law. His bookkeeping seems to have been left largely to a clerk. His report of receipts and expenditures seems to be substantially, if not literally, a copy of the book account which he kept with the estate. The $12,000 item referred to as having been paid to him appears to represent a note given by John F. Webber, payable to J. F. Webber and W. A. Lewis, executors of the Adaline Mowrey estate. The note was found in the iron box in which the Mowrey estate papers were contained. The mortgages held by testatrix at the time of her death were not found among the papers of the. Mowrey estate on the death of Mr. Webber, but two other mortgages were found, which seem to have been mortgages acquired by Webber and turned in to the estate. Webber's method of conducting his mortgage business seems to have been, in general, to make the loan and take the mortgage loan papers in his name, as mortgagee, and to sell the mortgage paper, sometimes as "a split loan,"—that is, a part of the paper representing the mortgage indebtedness would be sold to one customer, and part to another. The sale would be made so as to net the customer a smaller rate of interest than Webber charged the borrower. · The difference would be Webber's compensation and profit in the transaction. Apparently, assignments of mortgages by Webber to his customers were not usually recorded, and the record title to the mortgages sold by Webber remained in his name. These matters are based largely upon the conclusions of Mr. Lambert, a business associate of Mr. Webber's. Mr. Lambert was one of the attorneys who, with others, investigated the accounts after Mr. Webber's death, and was called as a witness for the objector, and also for the executrix of the John F. Webber estate.

So far as the record here shows, no further action in the Mowrey estate was taken by John F. Webber after the filing of his report on May 26, 1925. He died suddenly, April 7, 1928. J. E. Hull was appointed administrator *de bonis non* with the will annexed of the Mowrey estate. Estella Bailey Webber was appointed executrix of the estate of John F. Webber. On July 28, 1928, Estella Bailey Webber filed in the Mowrey estate a final report for W. A. Lewis and John F. Webber, the deceased executors. Among other things, this report recites that, about December 1, 1917, the executors filed an inventory, which "set out approximately the condition of the estate at the time same

was filed, but erroneously failed to set out all the property received by said executors. * * * A substituted inventory should now be filed, setting out, in addition to the property listed in the original inventory, all property received by such executors, a copy of which corrected inventory is hereto attached. * * * That no appraisement has been had of the property passing into the hands of the original executors, but all of said property save and except 12 shares of Blakesburg Savings Bank stock has been converted into cash, and either paid out in bequests, claims, and expenses or reinvested. * * * That all of the property converted into cash * * * amounted to $64,128.08, and of the property originally owned by said Adaline Mowrey there still remains 12 shares of the capital stock of the Blakesburg Savings Bank, valued at $2,100, making the total amount of the estate * * * $66,228.08 * * * That, during the years 1917, 1918, and 1919,'' bequests, compromises, claims, and expenses, including stock assessments, were paid out, ''leaving a balance in said estate at the end of the year 1919 of $17,179.43, including the 12 shares of the Blakesburg Savings Bank, estimated at $2,100; that at this time this executrix * * * believes that the estate should have been closed, and the balance of the property turned to the Wapello County Savings Bank, as trustee; but, for some reason unknown to this executrix, * * * same was not done, but the said John F. Webber, then president of the Wapello County Savings Bank, handled and invested the funds of the estate in the same manner as contemplated under the will that it would be handled by the Wapello County Savings Bank, as trustee * * * That said John F. Webber continued to invest and reinvest the funds of the estate in such securities as he believed was contemplated under the will, the same being mostly farm mortgages, at the rate of 5 per cent per annum; that, through error and mistake, the funds of said estate became commingled and mixed with the personal funds of John F. Webber, and he continued to invest the same, together with his own funds, in farm mortgages and other investments, and the exact amount of the moneys invested in particular farm mortgages belonging to said estate and the parts belonging to the said John F. Webber cannot be determined * * * That, on or about the 15th day of February, 1919, John F. Webber, one of the executors of the estate, apparently attempted to sell to himself 5 shares of the capital stock of the Hedrick State

Bank for the sum of $906.50; that thereafter, on or about the 15th day of March, 1924, said executor returned said stock to the estate, and thereby credited himself with the sum of $906.50 * * * That thereafter, on or about the 23rd day of September, 1926, said Hedrick State Bank having failed, * * * the executor was compelled to pay an assessment * * * Said stock is still in the assets of the estate, but is worthless.'' The report further states that the report filed by John F. Webber May 26, 1925, ''contains most of the receipts and disbursements of property belonging to said estate, and contains many items which are duplicates of investments made of funds both belonging to the estate and belonging to the said John F. Webber personally, and is so erroneously made as to be of little or no value in determining the condition of the estate, and, on account of duplications of the checks for investments of the same fund in mortgages or other property which were paid off and reinvested, erroneous conclusions were made as to the amount of property in said estate, which * * * this executrix * * * desires to correct * * * That, during the years 1917, 1918, and 1919, there was some income derived from dividends on capital stocks, interest on notes, and rents on real estate, the amount of which this executrix * * * is unable to determine, but believes that the same would not be more than fair compensation for the services of the executor during those years, and that no fees have been heretofore allowed or paid to the executor for services; and this executrix * * * asks that the court allow the income from said estate during the years 1917, 1918, and 1919 to the executor for services in settling said estate, and to further allow this executrix * * * to take credit for said income for said services, and to offset the same, thus releasing her of the necessity of accounting for said income, which she is unable to do accurately, if at all. * * * This executrix of the said estate of John F. Webber further represents that the records are so incomplete and the funds of said estate so intermingled with the property of John F. Webber that it is impossible for her to determine the exact amount of income received from the funds belonging to the Adaline Mowrey estate since December 31, 1919, but states to the court that those funds invested, which seem to have been the majority of the funds belonging to said estate, were invested in real estate mortgages, which netted 5 per cent interest, and

that 5 per cent interest is a fair and adequate income for such investment * * * That the said John F. Webber died April 7, 1918 [1928], leaving said estate incomplete, and the record in such shape that it required an immense amount of work for this executrix * * * and her attorney, C. J. Lambert, and that it has required a large amount of time, effort, and research to properly check, list, and make this report, and that she believes that an additional attorney's fee should be allowed for making this report, and asks the court to fix same. * * * This executrix * * * attaches * * * a true inventory * * * and statement of the receipts * * * Exhibit C, representing the disbursements * * * Exhibit E, being a statement of the balance of the estate for the benefit of the various legatees which were to participate in the income, * * * Exhibit F, showing the assets of the trust as of July, 1928, * * * and this executrix * * * asks that the court authorize her to file Exhibit A, being a correct inventory, and to authorize her to file this her final report, without an appraisement, and to approve the valuations in the inventory as though they had been properly appraised, and to further approve the payment of attorneys' fees to Roberts & Webber * * *''

The inventory attached to this final report shows cash in bank $2,433.13, shows ''Blakesburg Savings Bank stock, 15 shares, $2,625,''—total assets, $66,228. 08. The report shows receipts from the sale of property, but, instead of showing 15 shares of stock of the Blakesburg Savings Bank, sold for $2,625, as shown in Webber's report, it shows ''three shares Blakesburg Savings Bank stock 1-29-1919, $525.'' It shows receipts, $64,128.08. Exhibit F shows, as assets on hand at the death of John F. Webber, cash in bank, $189.55; Ward Farms Company mortgage, $5,000 (and earned interest); O. E. Reinier mortgage $2,650 (and earned interest). It shows ''Blakesburg Savings Bank stock, $2,100.'' It shows other small items. The aggregate is $11,063.33. To this report the administrator *de bonis non* with will annexed filed lengthy objections.

 I. The court ruled that the burden was upon the executrix of John F. Webber to sustain her report. Of this she complains. The ruling was correct. *In re Estate of Eschweiler*, 202 Iowa 259; *In re Lee's Estate*, 132 Ore. 1 (279 Pac. 850; 280 Pac. 342).

930

 II. The proceeding is in probate, and is not triable here *de novo*. *In re Estate of Mann*, 208 Iowa 1193; *Chamberlain v. Fay*, 205 Iowa 662.

III. Appellant complains that the executors of the Mowrey estate should not be charged with $2,625 as the proceeds of the Blakesburg Savings Bank stock. Certificates for 12 shares of stock in this bank were found in the box which apparently contained the papers belonging to

 the Mowrey estate. Appellant argues that, therefore, only three shares were sold. Manifestly, the entry in the John F. Webber book of having received $2,625 from the Blakesburg Savings Bank stock and his report to the court of such sale sustained the action of the district court in making charge accordingly. The contention of appellant is based upon conjecture, without substantial foundation. The court, on the record before us, could not have done otherwise than to make this charge.

IV. The court found the value of the estate, as of January 1, 1920, to be $29,660.20. The court ordered that this value be charged against John F. Webber, with interest from January

 1, 1920, at 6 per cent, with annual rests. The court, on the basis of his found inventory value, allowed as compensation to the executor $1,671.80. The court found that the statutory attorney fee, under the present statute, would be approximately $1,700, and that payments exceeding $3,000 had been made to the attorneys, and were shown in Webber's report. He allowed the payments as made and as reported by John F. Webber to stand. The court found that the regular and extraordinary services of the attorneys had been amply paid. The will of Adaline Mowrey required the executors to turn over to the Wapello County Savings Bank, as trustee, $10,000, the earnings from which, not to exceed $30 per month, were to be paid to Kate Smith during her lifetime; any additional net earnings over and above that to be added to the principal sum. The will made a number of bequests, and directed that the residuary estate be by the executors turned over to the Wapello County Savings Bank, as trustee,

which was empowered ⸰ ᵕ loan ᵥne same at such a rate of interest, as in the judgment of its officers and directors is consistent with first-class security at all times. ⁎ ⁎ ⁎'' The will made the Kate Smith fund on her death a part of the trustee fund. The will provided that all the net earnings from the trustee fund, ''including a fee of one per cent per annum to the trustee, for the services in handling said fund, be divided among'' the charitable institutions named. The will provided that, if either of the executors should fail to àct, then the Wapello County Savings Bank should act jointly with the one ''who does act,'' and, if both executors failed to act, then the Wapello County Savings Bank should act as sole executor.

As has been noted, the estate was practically settled January 1, 1920. The executor, Webber, however, did not turn over to the trustee the balance then in the estate. It is argued that, as Webber was president of the trustee, the Wapello County Savings Bank, he in effect became trustee; that he carried out the trust, and made disbursements to the beneficiaries under the will, and that it is immaterial that he did not make a formal transfer; that there was no fraud; that Webber's duties were honestly performed; that he had rendered extraordinary services, for which he should be allowed extra compensation; that he should have the allowance provided by the will for the trustee; that the beneficiaries of the estate have accepted the payments which have been made as provided by the trust, and are thereby estopped to deny that Webber was entitled to the compensation provided for its administration; that they have ratified what he has done; that the right to the one per cent compensation provided for the trustee was a matter between the Wapello County Savings Bank and its president, Webber, and the legatees had no interest in it.

It was the duty of John F. Webber to have closed the estate at the end of the three years. Code, 1927, Section 12044. No reason for not closing the estate and turning over the balance of the estate then in his hands to the trustee is shown. The designated trustee was the Wapello County Savings Bank. Though Webber was its president, he was not the Wapello County Savings Bank: that was a corporate and entirely different entity. Webber's duty as executor was to the court, was to make accounting, and to turn over the property in his hands

932

to the trustee. The beneficiaries in the trust did not take title to the trust funds. Neither did the trustee obtain power and complete title until it acquired possession of the funds. The administrator *de bonis non* succeeds to the title to the funds belonging to the estate. Webber did not purport to act as trustee. There is nothing to show that the beneficiaries, even though they had the power to estop the trustee, or to create an estoppel against themselves, had knowledge of any claim that Webber was acting as trustee, rather than as administrator. There is no basis for the claim of estoppel or ratification. Not only do we have the statements made by the appellant in her final report as to the failure of John F. Webber to keep correct accounts, but it is shown that a number of persons had been engaged in trying to straighten out Webber's accounts, but without success. He purchased mortgages from himself, without authority of the court. He took funds to the amount of $12,000 at one time, and for them gave his note to the estate, without authority of the court. The present litigation is the result of the failure of John F. Webber to keep the property belonging to the estate apart from his own property, and of his failure to keep correct accounts, and his failure to obtain the permission of the court for the investments which he made. He evidently was a very busy man, relied upon his memory, and did not anticipate sudden death. This, however, is no excuse to him or to the executrix of his estate. It was for the court, in the exercise of its legal discretion, to determine what, if any, compensation the executors and the attorneys, under all the circumstances, were entitled to. *In re Estate of Lipp*, 209 Iowa 409.

Commingling of trust funds with the private funds of the trustee and failure to keep accounts may very rarely, if ever, be condoned, or even palliated. Webber was a lawyer, and a  business man of much experience. He was capable of performing his duties, and of keeping accounts, and knew what his duties were. The record under review shows inexcused and apparently inexcusable violation by the executor of his fundamental duties. For breach of duty to keep the trust funds separate, and to keep reasonably complete and accurate accounts, the court may, in its discretion, deny compensation altogether. 26 *Ruling Case*

Law 1393; 24 Corpus Juris 996. The record shows no error of which the appellant may complain in the allowance of fees.

Webber was not entitled to fees, as matter of right, on January 1, 1920, or at any time, or to a deduction of them from the amount of the estate in his hands. The executor of his estate has no cause to complain that the allowance that was made was made as of the time as of which it was allowed. Webber was not, under the circumstances shown by this record, entitled to compensation provided for the trustee.

V. Complaint is made because the court awarded 6 per cent annual interest on the value of the estate, with annual rests. Webber should have accounted at the end of the three years. It was not only within his power, but it was his duty, to have absolved himself from further liability as executor for the funds then on hand. Instead of accounting, he used the funds in part in his own business, purchased from himself mortgages for the estate, and made investments without authority. He did this at his own risk. Appellant argues that 5 per cent is a reasonable rate of interest; that the trustee was authorized by the will to make investments at such rate as is consistent with first-class security; that 5 per cent is such rate that the trustee would have been entitled to 1 per cent interest out of that; and, therefore, that no more than 4 per cent interest should have been allowed. Webber, however, was still executor,—not testamentary trustee. He did commingle and use the funds. Without authority, he sold to himself, as executor, mortgages which he owned individually. It seems to be conceded, or at least it is a reasonable inference, that Webber made a profit on the sale of those mortgages. Six per cent is the statutory rate of interest. It was a proper exercise of the court's discretion, under the circumstances of this case, to require the executor to pay interest at the statutory rate of 6 per cent, with annual rests. *In re Estate of Lackie,* 185 Iowa 1101; *In re Estate of Brown,* 113 Iowa 351; *In re Estate of Young,* 97 Iowa 218; 24 Corpus Juris 85; 26 Ruling Case Law 1388.

VI. Appellant, as executor of the Webber estate, was ordered by the court to pay to the administrator *de bonis non* of the Mowrey estate the amount of the Mowrey estate as ascer-

tained, $38,005.03, with interest at 6 per cent, payable annually. It was further ordered that, in making payment, all property other than money should be turned over at its fair market value, but that appellant should not, without the approval of the court, be entitled to credit for any property turned over, if the objectors should object to it. The court retained jurisdiction to determine the value of assets which might be tendered, and ordered the administrator *de bonis non* to employ counsel, and to bring suit against Estella Bailey Webber, as executrix, upon the bond of John F. Webber and W. A. Lewis, as executors, if payment was not made within 30 days. Appellant argues that the executor *de bonis non* had merely a claim against the Webber estate, which should be allowed like any other claim.

The proceedings under review are in the Mowrey estate, not in the Webber estate. Appellant filed report in the Mowrey estate. The questions raised here are raised on that report. The appellant stands in court in the place of the deceased executor of the Mowrey estate. She purports to act as he ought to have acted. The order appealed from would have been proper if Webber had been living and it had been made upon his accounting. The appellant, as executrix of the Webber estate, in effect brings this proceeding, and makes herself, as executrix, a party to the proceedings in the Mowrey estate. The court properly fixed the amount for which the deceased executor should have accounted, and required accounting from his estate accordingly, and, in default, directed action against his estate and upon his bond. Generally speaking, though the rule is subject to exceptions, the loss should be ascertained and established by a settlement of the executor's account in the probate court before action is brought on the bond. See *Baitinger v. Elmore*, 208 Iowa 1342, and authorities there cited; 24 Corpus Juris 1079, 1086.

It may be added that it does not appear that the disposition of the funds of the Mowrey estate has been such that they may not be followed and recaptured, or a lien established on the property. 39 Cyc. 538 *et seq.*, 543.

Because of the appeal, appellant will be allowed 30 days from the filing of procedendo in the court below in which to comply with the judgment appealed from, during which time

action to enforce payment on the executor's bond will be suspended.—*Affirmed.*

EVANS, FAVILLE, ALBERT, KINDIG, and GRIMM, JJ., concur.