IN RE ESTATE OF HENRY SHEELER.

No. 44451.

E. P. Murray, for Murray, administrator, appellant.

Ray Rieke and Shull & Stilwill, for Mason J. Foft, appellee.

Shull & Stilwill, for Fidelity & Deposit Co., appellee.

Bedell & Bedell, for Floyd Sheeler, appellee.

Wormley & Wormley, for claimant, Walter Champeny, appellant.

BLISS, J.—Henry Sheeler died testate on November 27, 1929, survived by his wife, nine children and the children of a deceased child. Less than two years before his death he married the wife who survived him. Prior to their marriage, and on April 23, 1928, they had executed a written prenuptial contract, by the terms of which she waived dower and homestead rights, and accepted the agreement of Sheeler to establish a trust fund of $10,000, from which, if she survived him, she was to receive only the income, as long as she lived. Sheeler failed to establish the trust fund and failed to provide for her in his will.

On April 4, 1928, he executed his will, in which he stated:

"I direct that my executor shall sell all my property, both real and personal, at public and private sale, as soon as convenient after my death, in such manner and at such time as may seem to him to be for the best interest of my estate."

He further provided therein that after the payment of his debts, funeral expenses, and administration costs, his executor should divide the remaining proceeds from the sale of all of

his property into ten equal shares, one of which he bequeathed and devised to each of his nine living children, and one share to the children of a deceased son. Mason J. Foft, who was named as executor in the will, qualified on January 7, 1930. On January 27, 1930, he filed an inventory listing cash and bank deposits, without accrued interest, in the aggregate amount of $14,548.32, liberty bonds, $150, stocks, $25, promissory notes, aggregating $19,187, without accrued interest. He estimated the total face value of this property at $33,910.32. Among the notes he had listed his own note of $3,000, given to Sheeler on March 1, 1929, and due in a year. He estimated it as worth its full face value. The testator owned 671 acres of farm land at his death, which the executor, in the inventory, estimated to be worth $65,000. The liabilities of the deceased, at the time of his death, as found by the court, were $27,282, including the prenuptial obligation. The widow accepted the provisions of this agreement, and made no further claim upon the estate. The bond of the executor in the penal sum of $40,000 was signed by the Fidelity & Deposit Company of Baltimore, Md., as surety.

The executor having made no report, three of the daughters of 'the testator, on April 5, 1932, filed an application, for an order requiring the executor to show cause why reports should not be filed, and that he be removed, and a successor appointed. On April 22, 1932, he filed a report up to April 13, 1932, showing cash receipts of $27,114.62, of which over $15,300 was from cashing certificates of deposit, which he began collecting on May 4, 1930, and continued collecting until September 29, 1930. In this statement of receipts he listed the collection of $3,180, on May 1, 1930, in payment of his own note. His disbursements, according to the report, totalled $18,298.38, of which $10,000 was stated as being set aside for the use of the widow.

In September 1932, he filed a supplemental report, stating that he was mistaken in setting out in his previous report that he had paid his $3,000 note to the estate. He listed additional collections totalling $1,400, and additional disbursements, including fees to his attorney of $526.69, executor's fees to himself of $626.29, and executor's fees for extraordinary services, in the sum of $750. He also listed payments to the widow of $1,000. Hearings were had on these reports on April 22, 1932, and on October 5, 1932. It is unnecessary to refer to the tes-

timony at these hearings, save on a few matters. Speaking generally of it, it will suffice to say that the testimony of the executor was evasive, equivocating, contradictory, self-neutralizing, and a reading of it gives little information as to what he did with much of the money which came into his possession. After he collected the various deposits of the deceased in the banks of Kingsley and Pierson, Iowa, he deposited it to his individual credit in a bank at Sioux City, and mingled it with his own funds, and with the funds of other estates. He claimed that a little later he withdrew in excess of $10,000 of it and kept it in currency in different places. Much of it was withdrawn on checks to his son-in-law. Although requested to, he produced no bank books, books of account, or canceled checks, respecting these funds. He failed to account for interest on these moneys after collecting them. He asked for no orders from the court. He was negligent in collecting rentals. He was discharged as executor, on order of the court, on October 5, 1932, and directed to make a final accounting within twenty days. He never made any further accounting to the court. He never sold any of the land. E. P. Murray was appointed administrator with the will annexed.

The following matters, ascertained at the various hearings are involved in the controversy. Anna Rice, a daughter of the decedent, purchased of Foft land in South Dakota, which he personally owned. As part of the purchase price, she executed to Foft her note for $9,000 dated February 24, 1930, due March 1, 1931, and to secure its payment, she, at the same time, executed a written assignment of her one-tenth interest in her father's estate to the executor. This assignment provided that any part of the property assigned which was not necessary for the payment of the note was to be paid to her. It was also verbally agreed that if the assigned property was insufficient to pay the note, the deficiency on the note was to be canceled.

At his death the testator held two notes of Mrs. Rice for $3,450 which she did not pay to the executor. About April 1, 1930, the executor sold the Rice note of $9,000 to the claimant, Walter Champeny, for $9,000, which the purchaser then paid by check. Champeny was well acquainted with Foft, and knew he was executor of the Sheeler estate, and knew, in a general way, of the value of the estate. He solicited the purchase. He thought the note was good. He thought Foft was good, also.

He did not ask Foft for the assignment when he bought the note though he knew he held it. After the note had run for two years, he wrote to Mrs. Rice for the interest, and she replied that Foft was to pay the note and interest out of the estate. Some time in the fall of 1931, he asked Foft for the assignment, which was refused, but Foft wrote and signed the following endorsement on the back of the note: "This note is secured by assignment of interest in Henry Sheeler Estate." Champeny made no claim against the Sheeler estate, until February 21, 1933, when he filed an application therein, alleging the sale of the $9,000 note and the assignment of the interest of Mrs. Rice in the estate as security. He asked that the distributive share of Mrs. Rice be paid to him.

On March 9, 1932, the executor personally purchased the one-tenth interest of Floyd Sheeler in his father's estate, for a consideration of $6,500 or $7,500. The record is not clear as to the amount. It is conceded that it was all paid except a note for $2,500, which Foft gave Floyd Sheeler. Foft took a written assignment of Floyd's interest. On December 30, 1932, Foft transferred and assigned this assignment to the Fidelity & Deposit Co. of Baltimore, Md., to secure it against any loss as surety on his bond as executor. Foft never paid the $2,500 to Floyd Sheeler, and the latter filed a claim in the estate asking for the establishment of a vendor's lien on his interest.

On July 10, 1933, the administrator filed objections to the above-mentioned final and supplemental reports of the executor, and asked for a determination of the executor's shortage. Hearing was had in November 1933, and some subsequent hearings in 1934.

On August 17, 1937, the trial court rendered decree approving the final report of the executor except as to the item of $10,000 claimed to have been set aside for the widow, and except as to the item of $3,180 claimed to have been received in payment of his note, and except as to the item for the executor's attorney fees, which were reduced from $626.29 to $500, and except as to the fee of the executor, which was reduced from $1,376.69 to $750. The court further found and decreed that:

The executor had collected and was chargeable with the sum of $25,334.32, and was entitled to credits thereon of $10,834.01, leaving the sum of $14,500.61 unaccounted for on October 5, 1932; that under the testator's will an equitable con-

version was had of all of the real estate at the time of his death, and that the value of the real estate at that time was $125 an acre, making the total value of the real estate $83,875; that the total value of all of the assets of the estate at the time of his death, including the converted real estate, was $125,122.62, and the total liabilities as of that date were $27,282, leaving the then net value at $97,840, and each heir's share, $9,784; that Mrs. Rice was indebted to the estate on her notes in the sum of $4,076.44, which was a charge against her share of the estate, entitling the administrator to set off or retain this amount, leaving the net value of her share $5,707.56; that Foft, by his assignment, took only this net value of $5,707.56, and that if Champeny took any interest in the Rice share of the estate, because of his transaction with Foft, he took it subject to the further right of the estate to set off or retain from said share any indebtedness of the executor to the estate, and that since the executor was so indebted in excess of $5,707.56, the claimant, Champeny, took nothing by his assignment, and his claim is denied; that Floyd Sheeler retains an interest in his share of the estate in the sum of $2,675.29, being the balance owing him on the selling price to Foft, leaving the net value of his share in the estate, the sum of $7,118.71, at the time he was removed as executor; that the total net value of the two shares of Mrs. Rice and Floyd Sheeler, which the estate is entitled to credit upon the executor's shortage, is the sum of $12,826.27; that Foft, in addition to his shortage, also owed the estate $3,000, which should be deducted, leaving the net value of the credit, $9,826.27; that after deducting this credit from the total shortage of $14,500.61, there remained an unpaid shortage of the executor in the sum of $4,674.34, as of October 5, 1932, which sum he was ordered to pay to the administrator forthwith, with legal interest.

Neither Mason J. Foft, the Fidelity & Deposit Co. of Baltimore, Md., nor Floyd Sheeler, nor anyone interested in the estate, complains of this decree, or any part thereof, excepting E. P. Murray, the administrator, and Walter Champeny, a claimant. The last two have appealed to this court.

We will first consider the appeal of the administrator. He contends that the court erred in the following matters:

That the executor should have been allowed no fee, and that his attorney should have been allowed but $100; that the

executor's note item of $3,180 should not have been deducted from the final report; that the valuation of $125 an acre for the land was too high; that interest should be computed on the shortage and indebtedness up to the time of the final settlement of the estate, or until the indebtedness is paid; that no interest was computed on the shortage of the executor.

■ I. In passing upon the trial court's findings in the above matters, we must keep in mind that the proceedings before the court were in probate, and had to do with objections to reports. These matters are not triable or reviewable here de novo on appeal. If the findings have support in the record they cannot be disturbed by this court. In re Estate of Mann, 217 Iowa 1134, 251 N. W. 83; In re Anderson's Estate v. Stason & Knoepfler, 216 Iowa 1017, 250 N. W. 183; In re Estate of Mowrey, 210 Iowa 923, 232 N. W. 82; In re Estate of Clark, 151 Iowa 511, 131 N. W. 700; In re Estate of Schultz, 196 Iowa 125, 194 N. W. 242.

■ Respecting the value of the land the estimates ran from $150 to $200 an acre in December 1929 to $80 to $125 an acre at the time of the hearing in November 1933. There was testimony that there was almost no sale for land, and that such sales as were had did not fairly represent the value of land. The findings of the court on this item have support in the record.

■ With regard to the fees of the attorney for the executor we think there was proof sufficient. Respecting the $750 fee allowed the executor, we think the court was liberal, considering the services which he rendered, and his acts of misfeasance and nonfeasance. However, he served during a very trying business period, when it was almost impossible to sell land, or to collect rents. He gave attention to several hundred acres of land. He attended to digging two wells, to making repairs, trying to find buyers, paying taxes and insurance. It was necessary to drive about considerably. We do not feel that we should disturb this finding.

The principal of Mrs. Rice's indebtedness to the estate was $3,450 of which $1,000 bore 5½ per cent interest and the remainder 5%. The smaller note was given in February 1927, and the larger in April 1928. Whether any interest had been paid is not entirely clear. The trial court added $626.44 to the principal. Under the record we cannot say that the amount should have been materially greater.

■ With respect to the $3,000 note of the executor, the trial court made no computation of interest. There appears to be no warrant for such a finding. The note was given March 1, 1929, due in one year, with interest at six per cent. No interest was paid on it. Interest from the date of the note to the 5th of October, 1932, would be $645. This amount should be added to the shortage found by the trial court.

■ The trial court also made no finding that the executor should be charged with interest upon the estate funds which he had in his possession and under his control. When he was appointed executor on January 7, 1930, there came into his hands time deposits in banks to the amount of $14,548.32 and $150 in liberty bonds. This money was drawing interest, and it was not needed for any expenditures. He began withdrawing it on May 4, 1930, and continued the withdrawals until September 29, 1930, when the withdrawals amounted to $15,159.16. The record discloses no attempt at reinvestment. He intermingled it in his private checking account in a Sioux City bank. He testified:

"Yes, sir; I deposited $14,430 in the Security National Bank of Sioux City, a whole lot more than that. * * * I can show you all that. You will find there is over fifty thousand dollars deposited there. The deposit is in my name, put it on separate, carried that in a separate deal. * * * It was right in with the other money. I had the other money in the account just the same."

He checked on this account indiscriminately for personal and estate matters. He withdrew $9,400 and kept the currency in Omaha and Kingsley. He used it for his own purposes. What profit he made on its use, we have no means of knowing. Floyd Sheeler said that he sold Foft his one-tenth interest for $6,500. The court credited the executor on the basis of a valuation of $9,784 for each share. In his final report of April 1932, he showed cash receipts of $27,114.62. From this the court deducted the item of $3,180, which he mistakenly said he collected from himself, leaving a balance of $23,934.62. Deducting the bank deposits of $15,000 leaves a balance of $8,934.62 collected from other sources, which was ample to pay the expenditures, which he listed at $8,298.38, and left the bank money free for investment. He had collected all of these bank deposits by

October 1, 1930. He was discharged as executor October 5, 1932. In view of the fact that he used this amount of estate money as his own, and refused to give any account of how he used it, or what he made on it, it is our judgment that he should be charged interest on $15,000 for these two years at six per cent a year with annual rests. In re Mowrey's Estate, 210 Iowa 923, 232 N. W. 82; In re Estate of Lackie, 185 Iowa 1101, 171 N. W. 679; Bettendorf v. Bettendorf, 190 Iowa 83, 179 N. W. 444, 945. This interest would amount to $1,844. This amount together with the item of $645, for interest on the executor's $3,000 note, making a total of $2,489, should be added to the $4,674.34 shortage, decreed by the court.

■ II. There remains the appeal of Walter Champeny. As heretofore stated he purchased, on April 1, 1930, the $9,000 note which Mrs. Rice had given to Foft in payment of a farm of the latter in South Dakota. As security for the note, at the time of its execution, on February 24, 1930, she had executed to Foft a written assignment of her one-tenth interest in the estate. Foft thereby became the legal and the equitable or beneficial owner of so much of said interest as might be necessary to pay said note. He had no further interest therein. Had she paid the note from other sources, she would have become the absolute owner of said interest. Because of her indebtedness to the estate on the two notes held by her father at his death, his estate had the right to set off or retain the amount due thereon from her one-tenth interest. Foft took her share subject to that set-off. If Champeny was the assignee of this interest, he also took it subject to this set-off. The court fixed this set-off at $4,076.44, and the net value of the share at $5,707.56. Her share at the time she assigned it to Foft was not of a fixed, definite amount or value, but was unliquidated. Its definite value could not be determined until distribution was made. But since Foft held it only as security, it was not subject to further reduction because of any existing or future liability of Foft to the estate. She had dedicated or assigned her net interest in the estate to the payment of her note, and she is entitled to have it so applied in whosoever's hands it may be. Since Champeny is the holder of her note, he is entitled to receive the one-tenth distributive share of Mrs. Anna Rice, in the estate of Henry Sheeler, deceased, subject to the estate's right of set-off or retainer for her indebtedness to the

estate, in so far as it may be necessary to pay the amount due on her note. For the purpose of determining the amount of Foft's liability as executor of said estate, the net value of Anna Rice's share is fixed at $5,707.56.

■ III. In most of the cases the right of set-off or retainer, discussed herein, has been granted by courts of equity, and that is true in Iowa. However, the power or jurisdiction to pass upon such a matter is not restricted to the forum of equity. In re Estate of Mikkelsen, 202 Iowa 842, 848, 211 N. W. 254, 256, the proceedings were in probate, and Justice Morling, with reference to the principle, quoted with approval the following from In re Estate of Lietman, 149 Mo. 112, 120, 50 S. W. 307, 309, 73 Am. St. Rep. 374:

" * * * it rests upon wholesome principles of right and justice, which can be administered in probate courts, without the aid of a court of conscience."

To the same effect, see Avery Power Machinery Co. v. McAdams (1928), 177 Ark. 518, 7 S. W. 2d 770; Kinealy v. O'Reilly (1925), 28 Ariz. 246, 236 P. 716; State ex rel. Toller v. Ennis (1928), 222 Mo. App. 713, 7 S. W. 2d 737; In re Reiser's Estate, 57 Utah 434, 195 P. 317; Clay v. Clay, 149 Ga. 725, 101 S. E. 793; Stenson v. Halverson Co., 28 N. D. 151, 147 N. W. 800, L. R. A. 1915A, 1179, Ann. Cas. 1916D 1289; Springer's Appeal, 29 Pa. 208; Mahon v. Bower's Admr., 1 How., Miss., 275; 1 A. L. R. 998; 30 A. L. R. 777; 75 A. L. R. 879; Thompson v. McCune (1933), 333 Mo. 758, 63 S. W. 2d 41; In re Dayton's Estate (1935), 173 Okla. 180, 46 P. 2d 933; Loverett v. Veatch, 268 Ky. 797, 105 S. W. 2d 1052, 110 A. L. R. 1384.

■ IV. The will of the testator directed the executor of his estate to sell all of the property of the estate, as soon as convenient after his death, and distribute the proceeds among the beneficiaries named. While the executor had some discretion as to the time and manner of the sale, the direction was mandatory. Under well known legal principles, long followed by this court, this command effected an equitable conversion of the real estate into personal property, at the instant of the testator's death, and thereafter the real estate was to be treated as, and be subjected to the rules governing, personal property, in the execution of the trust. Beaver v. Ross, 140 Iowa 154, 118 N. W. 287, 17 Ann. Cas. 640, 20 L. R. A. (N. S.) 65; Ihle

v. Ihle, 222 Iowa 1086, 270 N. W. 452; Grady v. Grady, 221 Iowa 561, 266 N. W. 285; Inghram v. Chandler, 179 Iowa 304, 161 N. W. 434, L. R. A. 1917D 713; In re Estate of Sanford, 188 Iowa 833, 175 N. W. 506; In re Will of Miller, 128 Iowa 612, 105 N. W. 105; In re Estate of Mount, 189 Iowa 279, 178 N. W. 391; Boland v. Tiernay, 118 Iowa 59, 91 N. W. 836; In re Estate of Jackson, 217 Iowa 1046, 252 N. W. 775, 91 A. L. R. 937; 13 C. J. 859; 6 R. C. L. 1067.

 V. The right which the executor or administrator has, in the nature of a right of retainer, to set off debts owing by a beneficiary of an estate against his share therein, heretofore referred to in this opinion, ''is an equitable right of its own nature, and not at all dependent upon any statute. It is the plain moral, as well as legal, duty of the debtor to pay his debt to the estate. He has had the value from the estate. He ought, in morals and law, to restore it.'' Webb v. Fuller, 85 Me. 443, 445, 27 A. 346, 22 L. R. A. 177, quoted, with approval, in In re Estate of Mikkelsen, 202 Iowa 842, 848, 211 N. W. 254, 256.

In Russell v. Smith, 115 Iowa 261, 88 N. W. 361, this court, for the first time, I believe, mentioned insolvency as a factor in this right of retainer. It was definitely made a factor in Senneff v. Brackey, 165 Iowa 525, 146 N. W. 24, 1 A. L. R. 978, and has since been retained by this court, in many decisions. Speaking only for myself, and not for the court, I think that neither sound law, reason, nor authority justifies the fact of insolvency as a proper element in determining the right of retainer, because every person, solvent or insolvent, should give to the estate what he owes before taking anything from it.

 The claimant herein seeks the benefit of this factor in this case. He contends that since each beneficiary under the will takes exactly the share which he would have taken, had Henry Sheeler died intestate, each heir thereby takes his share, by descent, under the ''worthier title'' rule, rather then under the will, and that therefore, since the bulk of each share would be real estate, as intestate property, there is no right of retainer against it, because there is no showing that Mrs. Rice was insolvent. The ''worthier title'' rule was early mentioned by this court in Rice v. Burkhart, 130 Iowa 520, 107 N. W. 308, and reannounced and followed in Tennant v. Smith, 173 Iowa 264, 155 N. W. 267; Herring v. Herring, 187 Iowa 593, 174 N. W.

364; In re Will of Watenpaugh, 192 Iowa 1178, 186 N. W. 198; In re Estate of Davis, 204 Iowa 1231, 213 N. W. 395; In re Warren's Estate, 211 Iowa 940, 234 N. W. 835; Luglan v. Lenning, 214 Iowa 439, 239 N. W. 692, and other cases. The rule has been strictly construed. Before it can be applied, it must definitely appear that there is exact identity in every way. In Rice v. Burkhart, supra, on page 522, 107 N. W., on page 308, we said "when property is left to the testator's heirs in the *same manner and proportion* in which they would have taken were there no will." In Luglan v. Lenning, supra, on page 445, 239 N. W., on page 695, the language is, "the share taken by the heir must be 'exact' as to quantity and *quality* in order to set in operation the worthier title rule." The same language was used in In re Estate of Warren, supra, on page 949, 234 N. W. 835. In In re Estate of Davis, supra, on page 1234, 213 N. W., on page 396, we said:

"In order to bring the case within this rule, it is essential that the provision for the surviving spouse under the will should be identical in quantity and *quality* with the statutory provision to the same end." (The italics are all ours.)

Measured by this standard did Mrs. Rice take a "worthier title"? In our judgment she did not. The testator definitely expressed his command that the real estate be converted into personalty and then divided. Each beneficiary is to receive all personal property, and no real estate. Had Henry Sheeler died intestate, each of the children would have received one-tenth of the personal property and *one tenth of the real estate,* and consequently would not have received "exactly" what they did receive in kind or "quality", and perhaps, not in quantity. For that reason the issue of whether Mrs. Rice was insolvent or solvent is not material.

VI. The two appellees last named have moved for the dismissal of the appellant administrator's appeal, because they claim he has no appealable interest, in that he was not aggrieved by the decision, and further because he served no notice of appeal upon the beneficiaries under the will as co-parties. We believe there is no merit in the motion. The administrator is the representative of the beneficiaries under the will and of all other persons interested in the estate. In their behalf he objected to the executor's final report. In their behalf he made

application for a hearing and an order of court as to his shortage. Their relations were in no wise antagonistic. While interested in the outcome of the matter, they were not strictly co-parties. By his action he benefited them. By his appeal he seeks to further benefit them. The case is not reviewable de novo. He assigned specific errors. An affirmance leaves the status of each beneficiary as decided by the trial court. A reversal on any or all of his assignments of error benefits each beneficiary. They could not be adversely affected by the appeal. The motion to dismiss is denied.

VII. Foft, as executor, and the Fidelity & Deposit Company in their brief and argument, served November 17, 1938, in answer to the brief and argument of Champeny, for the first time raised the question that the Champeny appeal should be dismissed. The causes for the 21st judicial district were set for hearing for November 23, 1938. If it be conceded to be a motion to dismiss the appeal, it was not timely served. We have considered it as such a motion, and, in our judgment it is without merit for all of the reasons mentioned in division VI hereof.

Conceding arguendo, that Mrs. Rice was a co-party, she could not have been prejudicially affected by an adverse decision of this court. The trial court, by its decision had deprived Mrs. Rice of any possible benefit from her interest in the estate, as an aid in the payment of her $9,000 note. Champeny appealed from this decision, and urged that the proceeds of her distributive share be applied on this note. An affirmance on his appeal would not have changed the status of Mrs. Rice, while a reversal on that appeal and a granting of the relief asked by Champeny would necessarily benefit her. She could not have been adversely affected by the court's decision on the Champeny appeal. The motion to dismiss the appeal is denied. Brewer v. Stark, 198 Iowa 1238, 200 N. W. 915; Hoffman v. Bauhard, 226 Iowa 133, 284 N. W. 131.

The trial court erred in crediting the net value of the share of Mrs. Rice in the estate on the shortage of the executor, Foft. This net value of $5,707.56 should be added to his shortage. The total shortage found by the trial court, in the sum of $4,674.34, is therefore increased by the addition of the item of $645 as interest on the $3,000 note owing by Foft to the testator, and of the item of $1,844, as interest on funds of the

estate used by, and of the item of $5,707.56 which was wrongfully credited to, him by the trial court. The addition of these items makes the total shortage of the executor, for which he has failed to account, the aggregate sum of $12,870.90, as of October 5, 1932. This sum, with legal interest from said date is due and owing to E. P. Murray, administrator with the will annexed of the estate of Henry Sheeler, deceased, and should be paid to said administrator forthwith.

On the appeal of the administrator the judgment and decree of the trial court is affirmed as modified herein.

On the appeal of Champeny the judgment and decree of the trial court is reversed. On both appeals the judgment and decree of the trial court is remanded for entry in conformity herewith.

HAMILTON, SAGER, STIGER, HALE, OLIVER, MILLER, and RICHARDS, JJ., concur.

MITCHELL, C. J., concurs in result.